Lyle R. DEDMORE and John Edwards,
Appellants,

v.

UNITED STATES of America,
Respondent.

No. 18504.

United States Court of Appeals
Ninth Circuit.

Sept. 24, 1963.

Garver & Garver, Camas, Wash., for appellants.

Frank R. Freeman, U. S. Atty., Patrick H. Shelledy, Asst. U. S. Atty., and Carroll D. Gray, Asst. U. S. Atty., Spokane, Wash., for appellee.

Before HAMLEY, JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant Lyle R. Dedmore was convicted on four counts of a thirteen count indictment. Appellant John Edwards was convicted on one count of the same indictment.

The trial was to the Court sitting without a jury, a trial by jury having been expressly waived by appellants in the form and manner set forth in Rule 23(a), Federal Rules of Criminal Procedure.

Counts I through VI, inclusive, charge appellant Lyle R. Dedmore, Northern Brokerage Company, a Montana corporation, John Meyer, James Priestly, Tarris D. Dolan, Arnold V. Tibbetts, James E.

Caine, Gerald Dedmore, Lee Gregerson, John P. Stokes, William Baxter and Rody P. Byrne with offenses under Section 17(a) (1) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], which in pertinent part provides:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Counts VII and VIII charge the appellant Lyle R. Dedmore, and the other persons previously named, with offenses under the Mail Fraud Statute (18 U.S.C. § 1341), which in pertinent part provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

Count IX charges appellant Lyle R. Dedmore, and the other persons previously named, with a conspiracy to violate the Securities Act and the Mail Fraud Statute in violation of 18 U.S.C. § 371, which in pertinent part provides:

"If two or more persons conspire either to commit any offense against the United States, * * * and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. * * *"

Count X charges the appellants Lyle R. Dedmore and John Edwards, and Tarris D. Dolan, Arnold V. Tibbetts, James E. Caine, Gerald Dedmore, and Lee Gregerson with an offense under the Securities Act of 1933, 15 U.S.C. § 77q (a) above quoted.

Count XI charges the appellants, and the other persons named in Count X, with a conspiracy to violate the Securities Act and the Mail Fraud Statute in violation of 18 U.S.C. § 371. The conspiracy set forth in this count charges a different conspiracy than the one set forth in Count IX; the difference primarily being that the shares of stock of Treasure State Life Insurance Company of Butte, Montana, offered, sold and transmitted through the mail was acquired from different sources than the stock offered, sold and transmitted through the mail as set forth in the conspiracy alleged in Count IX.

Prior to trial on the charges contained in the indictment, the defendants John Meyer, James E. Caine, Gerald Dedmore, Lee Gregerson and John P. Stokes pleaded guilty to various counts contained in the indictment. After the commencement of the trial, the defendants Arnold V. Tibbetts and Tarris D. Dolan entered pleas of guilty to various counts contained in the indictment.

Upon the close of the government's case, in response to motions of the ap-

pellants, the District Court dismissed Counts I, IV, V, VI, VII, VIII, X, XII and XIII insofar as appellant Lyle R. Dedmore was concerned and Count X insofar as appellant John Edwards was concerned. At the same time, and upon motions for judgments of acquittal, the District Court acquitted the defendants William Baxter and James Priestly on all counts with which they were charged.

Following the denial by the District Court of the motion of appellant Lyle R. Dedmore for a judgment of acquittal, as to Counts II, III, IX and XI, the denial of appellant John Edwards' motion for a judgment of acquittal as to Count XI, and the denial of the motion of the defendant Rody P. Byrne for a judgment of acquittal as to the counts in which he was charged, the trial continued as to the defendants Northern Brokerage Company and Rody P. Byrne, and as to the appellant Lyle R. Dedmore on Counts II, III, IX and XI, and as to the appellant John Edwards on Count XI. Both of the appellants offered testimony in defense of the counts remaining against them.

Upon conclusion of the trial, appellant Lyle R. Dedmore was found guilty of the offense charged in Counts II, III, IX and XI, and the appellant John Edwards was found guilty of the offense charged in Count XI. The defendant Northern Mortgage Company was found guilty as to all counts in which it was charged, and the defendant Rody P. Byrne was found not guilty as to the counts in which he was charged.

The appellant Lyle R. Dedmore was sentenced on each count of which he was convicted to be remanded to the custody of the Attorney General for a period of eighteen months on condition that he be confined to a jail type institution for the period of ninety days, with the remainder of the sentence suspended under normal probationary conditions, and the additional condition that he not engage in the sale of securities during the period of probation. The sentence on each count was to run concurrently with the sentences on the other counts.

The appellant John Edwards was remanded to the custody of the Attorney General for a period of eighteen months on the same terms and conditions set forth in the sentence of appellant Lyle R. Dedmore.

Count II of the indictment as incorporated by the allegations contained in paragraph 1 of Count I of the indictment alleges in substance that the defendants therein named (including the appellant Lyle R. Dedmore), in the offer and sale of certain securities, to wit: common stock of Treasure State Life Insurance Company of Butte, Montana, by the use of the United States mail, employed a scheme to defraud and obtain money by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and engaged in transactions and practices which operated as a fraud and scheme upon the purchasers of said securities. The scheme to defraud is set forth in detail.

Count II also alleges that the defendants in the offer and sale of securities, in the manner and by the means described, in the Eastern District of Washington, placed in the United States mail a check in the amount of $500.00 to be sent and delivered by the Post Office to a bank in Seattle, Washington, for collection, said check being drawn by Larry Brown on said bank, payable to the order of the defendant, T. D. Dolan, bearing on the reverse side thereof the endorsement of said Dolan.

Count III of the indictment contains the same allegations as Count II, except that the check therein mentioned was in the amount of $1,000.00, and was drawn by one Phillip D. Forbes, but made payable to the order of the defendant, Dolan.

Count IX alleges and incorporates by reference the allegations made in Counts II and III as constituting elements of conspiracy and sets forth numerous other overt acts accomplished in furtherance of the conspiracy.

Count XI charges that the defendants therein named, (including appellants Lyle R. Dedmore and John Edwards), unlawfully conspired and agreed to commit violations of the Securities Act and of the Mail Fraud Statute, and incorporates by reference the scheme to defraud, previously mentioned, as constituting elements of conspiracy and also sets forth numerous other overt acts accomplished in furtherance of the conspiracy.

The record reveals that the over-all scheme or plan to defraud involved the offerings for sale and sale through the use of the mail and other means of interstate communication of shares of common stock of Treasure State Life Insurance Company of Butte, Montana. This company was organized under the laws of the State of Montana and was authorized to do business only in that state. The stock issue which was offered and sold to the investing public in the States of Oregon and Washington was an intrastate issue authorized for sale only in the State of Montana.

The shares of stock were of the par value of 50 cents per share. In the year 1959 the shares of stock were readily available and were selling on the market in the State of Montana for around $5.00 per share.

Under arrangements made with Treasure State Life Insurance Company, the defendant Northern Brokerage Company, a Montana corporation, of which defendant John Meyer was president, secured an option from the insurance company to purchase 250,000 shares of the common stock of this issue at $2.50 per share.

In the early part of 1959, Meyer conceived the idea of selling this stock outside the State of Montana and agreed to supply defendants Dolan and Tibbetts stock in the Life Insurance Company for resale at $12.50 per share. This arrangement was made in Spokane, Washington, at a meeting between Meyer, Dolan and Tibbetts and other defendants in March of 1959.

Sale of the stock commenced in the State of Washington shortly after such meeting. Upon procuring the stock from the Northern Brokerage Company for transfer to purchasers, Dolan signed a statement which warranted that the stock was being purchased by Dolan for purposes of "investment only". By agreement Dolan, Tibbetts, Caine, Stokes and Gregerson agreed to share the selling price in excess of $12.50 per share. On occasions Dolan secured stock for transfer to purchasers from individual original investors residing in the State of Montana, thus by-passing the Northern Brokerage Company. These purchases were made at prices of around $6.00 and $7.00 per share. Shares were generally sold to purchasers at $20.00 per share.

In order to verify that the offering price of $20.00 per share was a fair or going price, potential purchasers were told, on some occasions by some of the defendants, to telephone the Northern Brokerage Company or John Meyer. Some of the purchasers did so and were told by Meyer the stock was selling at as high as $30.00 per share.

Investors and prospective investors were told that the stock was a good investment at $20.00 per share and purchasers could resell the stock without loss if they desired to do so; that the stock was being purchased from an estate and was otherwise unavailable; that it was expected that the stock would increase almost immediately; and that the sellers of the stock were representing the Insurance Company. Many other representations were made which need not be delineated in this opinion.

The investors were not told by salesmen that the market for the stock in Montana was far below the purchase price; were not told that the salesmen's share of the sales price of $20.00 was $7.50; were not told of the profit represented in the purchase price which inured to the Northern Brokerage Company or to others from whom the stock had been acquired by Dolan. There were other failures and omissions on the part of the salesmen to disclose material facts of which they had knowledge.

We now pass to the evidence relating to the two appellants and the extent of their involvement and participation in the offenses of which they were found guilty. Both appellants had had prior experience in the sale of Life Insurance Company stock and life insurance policies. They had worked with defendant Gerald Dedmore and defendant Caine selling Commercial Travelers Insurance about 1956. Later, defendants Gerald Dedmore, Caine and Tibbetts worked for Reliance Insurance Company. Immediately before their association in the sale of Treasure State Life Insurance Company stock, appellants and defendants Stokes and Gregerson worked for defendant Caine selling Estates Life Insurance Company stock and insurance. Appellant Edwards, defendants Caine, Gerald Dedmore, Stokes and Gregerson had worked together in various enterprises and were friends.

During the summer of 1959, defendants Tibbetts, Stokes and Caine met Dolan and appellant Lyle Dedmore at Yakima, Washington. Appellant Lyle Dedmore agreed to introduce Tibbetts to prospective investors he knew in that area. Appellant Dedmore and Tibbetts called on Jack A. Jensen at Bickleton in the Eastern District of Washington. Appellant and Jensen had known each other before. After the introduction of Tibbetts to Jensen by appellant Lyle Dedmore, Tibbetts represented the stock was "a pretty good stock," and that the stock had a certain worth to which a mark-up or commission was added, amounting to $2.50 per share, resulting in the $20.00 sales price. In the presence of appellant Lyle Dedmore, Tibbetts represented to Jensen, through the use of a tabloid newspaper, that the Treasure State Life Insurance Company was connected with many other corporations listed in the newspaper; that the stock of Treasure State Life Insurance Company was "of short supply"; that it had been obtained through an estate in Montana; that Jensen could get his money back by resale of the stock at any time; and that the price could be verified by calling up the Northern Brokerage Company. Jensen gave Tibbetts a check in the amount of $1000.00 for 50 shares at $20.00 per share. The stock certificate was delivered to Jensen by mail about a month later. The shares transferred were purchased by Dolan from C. A. Salte of Montana for $7.00 per share.

On or about the date of the sale to Jensen, appellant Lyle Dedmore introduced Tibbetts to Cecil Everett, another Bickleton resident whom Lyle Dedmore had known for two or three years. Tibbetts told Everett that he had obtained a "block" of Treasure State Life Insurance Company stock from an estate; that the stock was not available on a stock exchange; was not in the open market and that about the only way of obtaining the stock was through an estate. Tibbetts said he would buy the stock back if Everett did not want it. No disclosure was made of the price the stock was selling for in Montana, nor was it mentioned that the stock cost Tibbetts much less. Everett bought 50 shares for $1000.00, at $20.00 per share.

Tibbetts, Caine and appellant Dedmore shared in the profit from the Jensen and Everett sales.

The day after the Everett sale, defendants Tibbetts and Caine called on Ronald Riel, who lived in the same area but near Yakima, Washington. Defendant Stokes had made the appointment for them. Riel bought 50 shares for $1000.00, or $20.00 per share, and gave his check in payment therefor. The check was promptly cashed and Caine and Tibbetts returned to the motel where defendant Stokes and appellant Lyle Dedmore were waiting. The proceeds of the sale were split and defendants Caine and Stokes and appellant Lyle Dedmore split $3.75 per share.

In the latter part of August, 1959, appellant Lyle Dedmore contacted one Morris Ganguet near Walla Walla, Washington, and informed him that he knew of a good deal in stock and someone would contact him in the near future about it.

Defendants Caine, Tibbetts, and Gerald Dedmore and appellant Edwards met at

The Dalles, Oregon. They all stayed in the same motel while they worked the area. It was agreed that $3.75 per share for each share sold would be divided equally between them.

On September 2, 1959 defendant Tibbetts and appellant Edwards called on Ronald R. Powell whom Edwards had known for two or three years, and who had bought Estates Life Insurance Company stock from Edwards a year or two before. Tibbetts did most of the talking. He said this stock was from the estate of a deceased Montana farmer and that the stock was being sold to raise money to pay inheritance taxes. Tibbetts said that the Treasure State Life Insurance Company owned other companies and that he had an option on a block of the stock and was only making a profit of around $2.00 a share. He further stated that the stock could not be bought from brokers and was only being hold by individual owners. Powell purchased 100 shares for $20.00 per share and when Tibbetts and Edwards returned two days later he bought another 150 shares at $20.00 per share, for which he paid by check. The stock transferred to Powell had been purchased at $6.00 per share from a shareholder in Montana.

About September 11, 1959, appellant Edwards and defendant Tibbetts contacted Mr. and Mrs. Wiitala. They had known appellant Edwards previously and had been solicited by him to purchase Estates Life Insurance Company stock. Both Edwards and Tibbetts did the talking. One or both said that Treasure State Life Insurance Company was a real good company; that its stock was a good buy; that there would probably be a stock split which would double the investor's money; that people had bid as high as $30.00 per share for the stock; and that the company had branched out into different enterprises to make money from its excess capital. Tibbetts said he had secured an option on the stock from an estate in Montana; that it was the only stock left and available; that he and Edwards would resell the stock for them if they wanted them to. Edwards told the

prospective purchasers they would have no trouble disposing of the stock if purchased. The Wiitalas purchased 100 shares at $20.00 per share. The stock transferred to the Wiitalas was derived from the C. A. Salte purchase by Dolan. In the same area Tibbetts sold stock to Mr. Dormaier. Appellant Edwards and defendant Gerald Dedmore picked up his $2,000.00 check. Defendants Tibbetts and Caine sold 50 shares to a Mr. Morrison at $20.00 per share. The stock transferred to him was also from the C. A. Salte purchase.

The aggregate sales prices from the Powell, Wiitala, and Dormaier sales were split, appellant Edwards and defendants Gerald Dedmore and Caine splitting $3.75 per share.

Thereafter, appellant Lyle Dedmore participated with defendant Dolan:

(a) in the sale of 25 shares of stock of Treasure State Life Insurance Company at $20.00 per share to Larry W. Brown;

(b) in the sale of 50 shares at $20.00 per share to Philip B. Forbes; and

(c) in the sale of 50 shares at $20.00 per share to Morris Ganguet.

These shares were subsequently purchased by Dolan from the defendant Northern Brokerage Company, at $8.10 per share and thereafter transferred to Brown, Forbes and Ganguet. Brown and appellant Dedmore had been previously acquainted and appellant Dedmore told Brown that Dolan had a profitable proposition to make; that the stock had doubled in value and that there had been a fantastic growth of Treasure State Life Insurance Company. In appellant Dedmore's presence, Dolan told Brown he had an option on $20,000.00 worth of Treasure State Life Insurance Company stock which was being distributed to introduce the company in that area; that the stock had gone up from $2.50 to $20.00 per share; that he was working for Treasure State Life Insurance Company; that the company had built up a great capital surplus which was invested in motels, grain storage companies and other businesses.

Appellant Lyle Dedmore introduced Dolan as a representative of Treasure State Life Insurance Company to Forbes. Dolan told Forbes, in appellant Lyle Dedmore's presence, that after going to Montana to investigate the prospects of the company, he had sold all of his assets to buy up stock; that the stock was only available to individuals who were representing the company; that the stock was hard to come by; that he was in need of ready cash or he wouldn't be sacrificing the stock at $20.00 per share; that the stock would probably be up to $30.00 a share in a short time; the company had accumulated a tremendous cash surplus; that there was a real strong possibility of a stock split; that only the initial representatives of the company could buy the stock; and that if Forbes did not take the stock at the time, he would not be able to get it later. Appellant Lyle Dedmore said the stock had originally sold for $2.50 and in two years had grown to $20.00 per share; that the growth was phenomenal and that if he had the money he would buy all the stock he could.

Appellant Lyle Dedmore contacted Ganguet earlier saying he knew of a good deal and someone would contact Ganguet in the near future. Thereafter defendants Dolan and Gregerson contacted Ganguet and stated that "Lyle" was out on a call. Ganguet purchased 50 shares of stock at $20.00 per share on that occasion. At about the same time appellant Lyle Dedmore participated with defendant Dolan in the sale of 50 shares at $20.-00 per share to Francis Wood. Appellant Dedmore shared in the commission paid by Dolan on all of the above sales. The mails of the United States were used in connection with all of these transactions.

We will first consider the assignment of errors relating to the insufficiency of the evidence. Appellant Lyle Dedmore contends that his conviction under Counts II, III, IX and X of the indictment is not supported by the evidence. Appellant Edwards contends that his conviction under Count XI of the indictment is not supported by the evidence.

Appellants appear not to question that the proof received in the case completely establishes violations of the Securities Act, the Mail Fraud Statute and the Conspiracy Statute in the offering for sale and the sale of the stock by the defendants Northern Brokerage Company, Meyer, Dolan, Tibbetts, Caine, Dedmore, Gregerson and Stokes.

The position of the appellants insofar as their claim of insufficiency of the evidence to justify conviction is concerned, is that they acted only in the capacity of introducing prospective investors to defendants Dolan and Tibbetts, who induced certain investors to make purchases. They disclaim any knowledge of any fraudulent scheme which existed between or among other defendants; disclaim any knowledge of the value of the stock; and disclaim any knowledge of any arrangements which had been made in the acquisition of such stock by other defendants.

Viewing the evidence as we must "in the light most favorable to the government, including the reasonable inferences to be drawn therefrom," Cape v. United States, 283 F.2d 430 (9th Cir., 1960), we are satisfied that there is ample direct and circumstantial evidence in the record which, together with reasonable inferences to be drawn therefrom, fully establish the existence of the essential elements of the offenses of which the appellants were found guilty by the District Court.

Appellant Lyle Dedmore's next assignment of error is that the trial court erred in finding that he was guilty of commission of the offense charged in Counts II and III of the indictment as an aider and abettor under Title 18 U.S.C. § 2(a).[1] We find no merit in this assignment. While the District Judge in the

---

1. 18 U.S.C. § 2(a) reads:
    "§ 2. Principals
    "(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.
    "(b) * * *."

course of his informal remarks at the conclusion of the testimony referred to the aider and abettor statute, nevertheless the record does not establish that appellant Lyle Dedmore was convicted of such offenses under the aider and abettor theory. There is ample direct and circumstantial evidence from which the District Court could properly infer guilty participation by appellant in the fraud practiced upon Forbes and Brown by appellant and defendant Dolan.

The next assignment of error made by both appellants is that the District Court erred in the admission of out-of-court statements made to or by alleged co-conspirators against the appellants who were not present at the time the statements were made. In their brief, appellants fail to specify any particular item of evidence, the admission of which they now claim was prejudicial to them. Thus there is complete failure on the part of appellants to comply with Rule 18, subd. 2(d) of the Rules of this Court. In relevant part this rule provides that appellant's brief shall contain:

"(d) In all cases a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. When the error alleged is to the admission or rejection of evidence the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found."

■■ The burden of showing error is upon the appellants and we are not required to search the lengthy record in this case for possible error. However, since we have held that there is ample direct and circumstantial evidence in the record, independent of the acts and declarations of other conspirators, from which the District Court could properly infer knowledge of and guilty participation by the appellants in the conspiracies of which they were convicted, it follows un-

der established principles of law that out-of-court statements made by other conspirators in carrying out the object or purpose of the conspiracy were properly admitted against the appellants, even though the appellants were not present when the acts or declarations of the co-conspirators were made. Marino v. United States, 91 F.2d 691 (9th Cir.1937); Parente v. United States, 249 F.2d 752 (9th Cir.1957).

■ It is to be noted that this case was tried by the court sitting without a jury. Under such circumstances it is to be presumed, absent a showing to the contrary, that the District Judge considered only material and competent evidence in arriving at his findings of guilt. Pasadena Research Laboratories v. United States, 169 F.2d 375 (9th Cir.1948).

The remaining assignments of error are made on behalf of appellant Edwards and center around his claim that the United States District Court for the Eastern District of Washington was without jurisdiction to try him for the offense alleged in Count XI of the indictment for which he was convicted in that he committed no act in furtherance of the conspiracy therein alleged within the territorial jurisdiction of Washington.

As previously noted, this appellant participated with defendant Tibbetts in the sale of stock purchased by Ronald R. Powell. This occurred in the State of Oregon. Appellant Edwards also participated with defendant Tibbetts in the sale of stock to the Wiitalas. This occurred in the territorial jurisdiction of the United States District Court for the Western District of Washington; and with the defendants Tibbetts and Gerald Dedmore in the sale of stock to Mr. Dormaier. This occurred in the State of Oregon.

■ There is abundant evidence in the record to establish that defendants Dolan, Tibbetts and Caine formed a conspiracy to violate the Securities Act and the Mail Fraud Statute in the Eastern District of Washington, and committed overt acts in furtherance thereof in the Eastern District of Washington before appellant Ed-

wards became associated with them. There is sufficient direct and circumstantial evidence to support the implied finding of the District Court that appellant Edwards knowingly joined such conspiracy and that he committed overt acts in furtherance of the conspiracy outside the territorial limits of the Eastern District of Washington. The record also establishes that after the performance by appellant Edwards of such overt acts, other members of the conspiracy committed additional overt acts in furtherance of the conspiracy in the Eastern District of Washington. Under such circumstances the United States District Court for the Eastern District of Washington had jurisdiction to try the appellant Edwards on the offense set forth in Count XI of the indictment. See Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L. Ed. 1114 (1912); Lile v. United States, 264 F.2d 278 (9th Cir.1958); Marino v. United States, supra.

The judgments of conviction are affirmed.