UNITED STATES of America,
Appellee,

v.

Thomas W. PHILLIPS, Appellant.

No. 20021.

United States Court of Appeals,
Eighth Circuit.

Oct. 14, 1970.

Richard Marx, St. Louis, Mo., for appellant.

Richard Minkoff, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., and Peter T. Straub, Asst. U. S. Atty., St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, Circuit Judge, JOHNSEN, Senior Circuit Judge, and HEANEY, Circuit Judge.

JOHNSEN, Senior Circuit Judge.

In United States v. Phillips, 432 F.2d 973, decided September 21, 1970, we affirmed a conviction of Phillips for violation of 18 U.S.C. § 922(g) in having, as a previous felon, carried a pistol on an airline flight from Indianapolis, Indiana, to St. Louis, Missouri. Phillips' present appeal is from a later conviction for violation of 18 U.S.C. § 371, in having conspired with a Mrs. Williams to make the interstate trip to consummate the extortion of $25,000 from a Missouri resident named Bell. Extortion in Missouri is made a state crime by Mo. R.S. § 560.130, V.A.M.S. § 560.130, and use of interstate travel to promote or to engage in that state crime is made a federal offense by 18 U.S.C. § 1952.[1]

The indictment on which Phillips was tried ran against him and Mrs. Williams jointly and contained charges against them of a substantive offense under § 1952 and of a conspiracy offense in relation thereto under § 371. The jury acquitted Phillips of the substantive charge, but, as noted, found him guilty of the conspiracy charge. Mrs. Williams, who was the Government's principal witness, had prior to Phillips' trial entered a plea of guilty to the conspiracy count but had not yet been sentenced, which facts Phillips' counsel took particular occasion to bring out to the jury on his cross-examination of her.

Some of the aspects which the jury was entitled to find from the evidence will be indicated. Bell was a small-town businessman in Missouri, where he had a wife and children. Mrs. Williams, who lived in Indianapolis, had been Bell's "paramour"—as he characterized her—for more than four years, and he had bought her a house there in which to make her home. He had engaged in trips throughout this period from Missouri to see her, and he had made payments of cash to her during that time totalling over $100,000.

The last trip in which he had so engaged occurred about two days before Phillips' and Mrs. Williams' conspiratorial trek to St. Louis. He had on this occasion taken Mrs. Williams out to dinner and for an evening of entertainment, and they had returned to the house around 1:00 a. m. Phillips, unknown to Bell, also was a friend of Mrs. Williams, and she had informed him of Bell's current presence in the city. He requested her to keep Bell out that evening so that they would not get back to the house until around or after 1 o'clock. Phillips was at the time employed at the local Chrysler plant and would not get off from work until midnight.

When Bell unlocked the front door and proceeded into the house ahead of Mrs. Williams, he was met in the living room by Phillips with a gun in his hand. Phillips bound Bell's hands and feet, informed him that he knew of Bell's

---

[1]. Section 1952, as here pertinent, makes it a federal crime for anyone to travel in interstate commerce "with intent to * * promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity * * * "—with the term "unlawful activity" being made to include, among other things, "extortion * * * in violation of the laws of the State in which committed * * *". The Missouri statute against extortion, as noted previously, is Mo.R.S. § 560.130, V.A.M.S. § 560.130.

relationship with Mrs. Williams, demanded that Bell raise $25,000, and threatened that unless he did so harm would come to his wife and children. After additional threats, Bell indicated his willingness to return to Missouri on an early morning flight to raise the money, and Phillips then freed him. Phillips after engaging in further emphasis stated that he and Mrs. Williams were going to leave, warned Bell not to use the telephone or otherwise contact the police, and said that he would call Bell in Missouri the next day around noon to be certain that he had gotten the money.

Bell returned to Missouri on the early morning flight, as Phillips had demanded he do. He revealed to his wife the sordid affair which he had been having and told her of his immediate plight. After weighing the situation, he decided to get in touch with the F.B.I. When Phillips telephoned him around noon, he told Phillips that he had arranged to get the $25,000, and Phillips instructed him to meet Mrs. Williams the next morning at a certain time in the restaurant of the St. Louis airport and pay over the money to her.

Before they deplaned at St. Louis, Phillips gave Mrs. Williams an attaché case to which to transfer the money she would receive from Bell from her purse or handbag. As Phillips and Mrs. Williams left the plane, they separated, but each was kept under surveillance by the F.B.I. Mrs. Williams proceeded to the restaurant as planned, where she joined Bell who was seated at the counter. He turned over to her a package of money, which the F.B.I. had made up to insure its identifiability. After she had put the package into her purse or handbag, she was arrested by the F.B.I. Phillips was also arrested, with a gun and ammunition clip on his person. (The transportation of the gun was made the subject of the charge and conviction mentioned at the start of this opinion.)

None of Phillips' contentions here entitle him to a reversal, and we affirm his conviction. The contentions need be only briefly discussed.

Constitutional contentions in such number are set out in appellant's brief as to represent almost a catalog. Bald assertions are made that § 1952 is violative of the First Amendment, the Fifth Amendment, the Sixth Amendment, and the Tenth Amendment, in their relation respectively to the right peaceably to assemble; the right of freedom of speech; the prohibition against double jeopardy; the guarantee of due process against vagueness and uncertainty as to standards of conduct; the denial of equal protection as a matter of due process on the differences existing in the criminal statutes of the various states; the right to trial in the state and district wherein the crime shall have been committed; and the reservation of powers to the states pertaining to matters exclusively within their jurisdiction and not of the federal government.

Such naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion. But if we were to indulge tolerantly in any expression as to them, there could be no occasion to go further than to point out that they have virtually all been previously urged against § 1952 and rejected by us in *Spinelli*, (Spinelli v. United States), 382 F.2d 871 (8 Cir. 1967) [reversed on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637]. The statements and implications of that opinion, 382 F.2d at 887–888 and 890, are ample to indicate the utter lack of substance in any of them as related to § 1952.

■ Beyond his constitutional assertions, however, Phillips contends that § 1952 should be construed as being without legislative intent and reach against the "unlawful activity" of individuals, but only against such activity on the part of organized crime or professional syndicates. A similar argument also was made in *Spinelli*, where the state crime involved was gambling, and where the subdivision of § 1952 relating thereto uses the language "business enterprise involving gambling". We there said, 382 F.2d at 889–890, that no distinction

could be said to be required to be made under the statute between the business enterprise of a "small" or individual gambling operator and that of "big time" or syndicate gambling operators.

Even less is there facial basis on the language of the subdivision of § 1952 relating to extortion to argue for a distinction between individual and syndicate activity as to that state crime. The subdivision applicable to extortion does not contain the term "business enterprise" as does the subdivision applicable to gambling. The word "extortion" is used unqualifiedly in § 1952 and thus plainly is entitled to the full scope of its significance under state law as an "unlawful activity". It might be added commentarily that blackmail is so universally regarded as a repulsive and contemptible activity that it would indeed have been strange if Congress, in exercising its interstate commerce powers to assist the States in preventing the commission of that crime, had presumed to draw lines of distinction between blackmail perpetrators where the state statute involved had drawn none. In any event, we refuse to impute to Congress any such intention where it has engaged in no language of limitation or qualification as to the scope of the state crime to which the federal transportation offense is made applicable, and where, as in the situation here, the state statute embraces all extortion, whether done by an individual person or by a syndicate organization.

■ Phillips further contends that it was error for the trial court to deny his motion to require the Government to elect whether it would try him on the theory that the conspiracy as to its aspect of interstate travel had for its intent to "promote" or to "carry on" or to "facilitate the promotion * * * or carrying on" of the alleged extortion. This contention also has been given answer in *Spinelli*, 382 F.2d at 888. The several quoted terms, used in the statute and incorporated in the indictment, would seem to be designed to foreclose any legalistic wrangling on whether a

defendant could be regarded as having intended or attempted to commit the extortion act itself. The terms are without any such degree of difference in scope or significance that they can be declared to be abstractly able to give rise to any substantial difficulty in either preparation or trial. And as related to the question of right to reversal, which is our concern here, Phillips' motion did not demonstrate any concrete probability of actual and substantial hardship in his preparation; also the record before us satisfies that no such handicapping difficulty was in fact experienced in relation to his trial.

■ It is contended that it was error to admit in evidence the gun which Phillips had carried to St. Louis. The lack of merit in this contention seems to us self-evident. Phillips had originally deemed the use of a gun to be either necessary or facilitative to impress upon Bell his seriousness as to the extortion demand and as to the threats which he made in relation to it. Without any other convincing explanation of its purpose, his carrying of a gun to St. Louis could rationally be regarded by the jury as similarly having relation to his intent and determination as to accomplishing the extortion in Missouri. Thus the gun clearly was relevant and competent as a probative element on the question of the intent involved in making the interstate trip to St. Louis.

Another contention made is that the prosecution charges were without basis for being brought in Missouri, in that "the violation was of the extortion laws of Indiana—not that of Missouri". The original threats and intimidation had occurred, of course, in Indiana, but they were given extension to and operation in Missouri by the demand made that the money be paid in that State and from the trip made with intent and attempt to effect its collection there. It is of no importance here whether Indiana law was or was not violated by the threats and intimidation engaged in at Indianapolis. The making of the trip into Missouri in continued extortion pressure and to

effect the collection of the blackmail money there would for purposes of § 1952 clearly cause the interstate travel to involve the promoting or carrying on of unlawful activity in relation to the Missouri statute.

■■ · But beyond the matter of such a Missouri relationship as to the substantive charge under § 1952, what is residually involved here as to the conspiracy charge is merely a question of venue as to that charge. It is hornbook law that jurisdiction for the prosecution of a federal conspiracy charge exists in any district where overt acts have been committed. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); Finley v. United States, 271 F. 2d 777, 781 (5 Cir. 1959); Dedmore v. United States, 322 F.2d 938, 946–947 (9 Cir. 1963). See also 18 U.S.C. § 3237. Here, the deplaning of Phillips and Mrs. Williams at the St. Louis airport, Phillips' carrying of the gun into that State, Mrs. Williams' meeting with Bell at the airport restaurant, and the taking of the money from Bell, were all overt acts done in Missouri.

■ It is further contended, however, that even if jurisdiction existed to lay the charge in the Eastern District of Missouri, it was error for the court to deny appellant's motion under Fed.R. Crim.P., Rule 21(b), 18 U.S.C.A., to transfer the case for trial to the Southern District of Indiana, where Indianapolis is located. The question of transfer under Rule 21(b), "(f)or the convenience of parties and witnesses and in the interest of justice", is one involving realistic approach, fair consideration and judgment of sound discretion on the part of the district court. Where such a motion has been denied and trial has been had, a party, to be entitled to a reversal, must assume the burden under Fed.Crim. Rule 52(a) of demonstrating that some substantial right has actually been affected. The record contains no

basis for such an assertion or such a persuasion here.

We shall not presume to extend this opinion further by a discussion of appellant's other contentions. All of them have been duly considered upon the arguments and the portions of the record relating to them. They are lacking in any merit, just as fully as the contentions which we have discussed.

Affirmed.