UNITED STATES of America, Appellee,

v.

John D. McGREGOR et al., Appellants.

No. 74–1347.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Oct. 7, 1974.

---

Jack S. Nordby, St. Paul, Minn., for appellants.

Thorwald Anderson, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

John D. McGregor, Robert Fletcher, and Fountain Agency, Inc. were each charged in a twenty-six count indictment with the use of the mail for the purpose of executing a scheme to defraud in violation of 18 U.S.C. § 1341. Specifically, the indictment alleged that the defendants, acting as agents for Northland Insurance Co., caused notification of insurance policy cancellations to be sent to Northland for the purpose of obtaining premium refunds from Northland. However, the defendants' customers, whose policies were cancelled, were never informed of the cancellation. From a verdict finding them guilty of all twenty-six counts, McGregor, Fletcher and Fountain appeal contending that the court erred in denying their motion for transfer to another district and that the evidence was insufficient to establish that they acted with intent to defraud.

During the relevant time period, Fountain Agency, Inc., an insurance agency incorporated in Louisiana, was primarily involved in selling automobile collision insurance, generally on vehicles newly purchased by high risk drivers. The policies were often written by the auto dealer himself acting as Fountain's subagent and financed together with the purchase price of the auto through finance companies such as General Motors Acceptance Corporation. Fountain, itself, was not the insurer, but merely the agent for several insurance companies, chief among which was Northland Insurance Co., a licensed insurance company in Minnesota.

Fountain had negotiated a retrospective contract with Northland, under the terms of which Fountain earned 80% of

the premium and Northland earned 20%. The total premium, however, was forwarded to Northland; the 80% was credited to Fountain's account at Northland and used as a fund out of which all claims by Fountain's insureds were paid. After claims adjustment, if the losses did not exceed the agent's earned premium pool, Northland would refund a pro rata amount of earned premium to Fountain.

These retrospective contracts added to cash flow problems already suffered by Fountain. Not only did Fountain experience a need for revenues to pay operating expenses but it also negotiated collateral contracts with subagents who sold policies under which the subagent, usually the automobile dealer, could retain 20% of the face value of the insurance premium as a commission for the sale of the insurance policy. Fountain thus committed 120% of the premium at the outset.

After it was realized that expanding its business under retrospective contracts did nothing to remedy the cash flow problems, McGregor consulted with other insurance agencies who were also experiencing the same difficulties with retrospective contracts. After consulting with these other agencies and with an employee of the Louisiana Insurance Commission, McGregor determined to undertake a program of cancelling policies without notifying or forwarding refunds to the insured.

Under the plan, notices of cancellation were prepared on arbitrarily selected policies, the originals of which notices were sent to Northland. Copies were prepared for the policyholder and lienholder, but were not sent. Rather, they mailed other documents to the policyholder and the lienholder by registered mail. Certificates of mailing were obtained for these mailings and sent to Northland with the original of the notice of cancellation as false proof that notices of cancellation had been sent to the policyholder and the lienholder. Northland then refunded to Fountain the prorated unearned portion of the premium on the cancelled policy. In effect, these policies were cancelled to the insuror, but not to the policyholders or lienholders who could still hold Northland primarily liable on the policy since they never received notices of cancellation.

During the periods of cancellation, Fountain paid claims against the cancelled policies out of the refunded premiums. As the cash flow situation improved, Fountain began to rewrite the previously cancelled policies with Northland. Names of the policyholders on the reissued policies were changed slightly so that, as McGregor testified, the computer would not reject the policy application. None of the cancelled premiums were ever refunded to the policyholders. Fountain employees were under instructions to conceal records of these cancellations from Northland representatives. Northland was never reimbursed for its prorata loss of its 20% premium nor for its potential liability under the policy during the period of cancellation. When delays began to develop in Fountain's ability to pay claims against the cancelled policies and complaints were directed to Northland, the plan came to light.

*Motion for Transfer.*

██ The Constitution provides that "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been Committed." U.S.Const. art. III, § 2. The sixth amendment carries a like command. However, Fed.R.Crim.P. 21(b) permits a transfer:

> For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district.

This Court has held that the grant of transfer under that rule is a matter of the discretion of the district judge. United States v. Phillips, 433 F.2d 1364 (8th Cir. 1970), cert. denied, 401 U.S.

917, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971). In reviewing the district court's exercise of discretion in these matters, we are guided by the enumeration of factors which were considered in Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 243–244, 84 S. Ct. 769, 771, 11 L.Ed.2d 674 (1964):

> (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

Concerning those factors, the Supreme Court stated that the main office or "home" of the defendant has no independent significance in determining whether transfer to that district would be "in the interest of justice," although it may be considered with reference to such factors as the convenience of records, officers, personnel and counsel. *Id.* at 245–246, 84 S.Ct. 769.

 18 U.S.C. § 3237(a) provides in part:

> Any offense involving the use of the mails . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such . . . mail matter moves.

The Supreme Court and other circuits have accordingly held that the government may elect to bring the prosecution in the district where the letter was mailed or where it was delivered. Salinger v. Loisel, 265 U.S. 224, 233–234, 44 S.Ct. 519, 68 L.Ed. 989 (1924); Benson v. Henkel, 198 U.S. 1, 15, 25 S.Ct. 569, 49 L.Ed. 919 (1905); United States v. Sorce, 308 F.2d 299, 300 (4th Cir. 1962), cert. denied, 377 U.S. 957, 84 S.Ct. 1635,

12 L.Ed.2d 500 (1964); Kreuter v. United States, 218 F.2d 532, 534 (5th Cir.), cert. denied, 349 U.S. 932, 75 S.Ct. 777, 99 L.Ed. 1262 (1955); Holdsworth v. United States, 179 F.2d 933, 936 (1st Cir. 1950); Kaufman v. United States, 163 F.2d 404, 411 (6th Cir. 1947), cert. denied, 333 U.S. 857, 68 S.Ct. 726, 92 L.Ed. 1137 (1948); Gates v. United States, 122 F.2d 571, 577 (10th Cir.), cert. denied, 314 U.S. 698, 62 S. Ct. 478, 86 L.Ed. 558 (1941); Johnson v. United States, 59 F.2d 42, 45 (9th Cir.), cert. denied, 287 U.S. 631, 53 S.Ct. 83, 77 L.Ed. 547 (1932). Venue for this crime, then, properly existed in Minnesota, the location of the addressee of the fraudulent mail. To determine whether the appellants were entitled to a transfer from the district for trial, the factors announced in *Platt* come into play. Here the party defrauded was an insurance company based in Minnesota. The chief government witness was the vice president of Northland. Other Northland witnesses and the postal inspectors involved were from Minnesota. Most of the documents entered into evidence during the trial came from Northland's office. These factors buttress the trial court's denial of the motion for transfer. The appellants have failed to demonstrate, as required by United States v. Phillips, *supra*, 433 F.2d at 1368, that some substantial right has actually been affected. The motion was properly denied.

### Sufficiency of Evidence.

We have recently reiterated the essential elements of a violation of 18 U.S.C. § 1341:

> "(1) a scheme conceived by appellant for the purpose of defrauding . . . by means of false pretenses, representations or promises, and (2) use of the United States mails in furtherance of the scheme." "Scheme" to defraud within the purview of this section involves some connotation of planning and pattern. Thus, intent to defraud is an essential element. It may be inferred by all the facts and

circumstances surrounding a transaction. [Additionally] . . . to bring the scheme within the ambit of the mail fraud statute, the mails must be used for the purpose of executing the scheme, . . . must be employed before the scheme reaches fruition, . . . yet, need not be contemplated as an essential element of the scheme.

United States v. Nance, 502 F.2d 615, 618 (8th Cir. 1974). The appellants concede that there is no doubt here that the mails were in fact employed and that this use of the mails was an integral part of the activity which the government alleged to be fraudulent. They do, however, contend that the first requisite was not met on this record. They maintain that because McGregor consulted the Louisiana Insurance Commission, because he received advice from other agencies undergoing similar difficulties, and because Fountain paid all claims against the cancelled policies during the periods of cancellation, they did not have the requisite intent to defraud.

 In reviewing the sufficiency of the evidence, we note that the verdict must be sustained if there is substantial evidence, taking the view most favorable to the government to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). United States v. Madden, 482 F.2d 850, 851 (8th Cir. 1973). The district court made clear in its instructions to the jury that specific intent to defraud was essential to a finding of guilt. Given the proper instructions of the district court and the scope of review, we find that there was sufficient evidence of covert conduct which could permit the jury to determine that the appellents acted with the requisite intent to deceive both Northland and the policyholders. Policyholders were never informed of the cancellation. Office personnel were instructed to conceal the cancellation practice from Northland representatives. At the outset the substitution of other documents for the cancellation notices was effectuated by McGregor in the privacy of a closed office without informing office personnel of the procedure. Northland was never reimbursed for its potential risk during the period of cancellation. Names were altered on reissued policies so that a computer would not detect the prior cancellations. Fountain, while paying claims against cancelled policies acted as an insurance company, an enterprise for which it was not licensed and could not meet capitalization requirements. Given this evidence, resolved in the light most favorable to the verdict, it is clear that the jury, as properly instructed, found that the appellants had specific intent to defraud.

For the reasons hereinbefore expressed, the judgment of conviction is affirmed.