## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55800-9-II |
| Respondent, | |
| v. | |
| XAVIER M. MAGANA, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Xavier M. Magana appeals the denial of his motion to withdraw his guilty plea. Magana argues that the trial court violated CrR 7.8's procedural requirements and in so doing violated his procedural due process rights when it failed to hold a hearing on the merits before denying his motion.[1] In a statement of additional grounds (SAG) for review, Magana argues that restitution was unconstitutionally imposed on him and that the trial court was required to strike all legal financial obligations (LFOs) and waive all interest accrued. He also argues that he was misinformed about a direct consequence of his plea and that the State breached the plea agreement when it recommended 36 months of community custody instead of the agreed 24-48 months.

We hold that the trial court erred by failing to fix a time and place for a show cause hearing. Accordingly, we reverse the trial court and remand Magana's motion to withdraw his guilty plea so that the trial court can hold a show cause hearing.

---

[1] Magana also argues that when denying his motion to withdraw plea, the trial court failed to enter findings of fact and conclusions of law; that it was judicially estopped from denying the motion without holding a hearing on the merits; that it applied the wrong legal standard; and that it erred in denying the appointment of an expert for translation services. In light of our decision, we do not reach these arguments.

FACTS

I.    FACTUAL BACKGROUND

On July 12, 2009, at approximately 8:22 p.m., Tacoma Police officers responded to a report of "shots fired with a person down." Clerks Papers (CP) 3. Officers found Alrick Hendricks suffering from multiple gunshot wounds lying on the ground. He was pronounced dead at the scene. Witnesses told police that Hendricks was at a graduation party where Magana had been earlier. Hendricks and a friend were out on the front porch when Magana walked by. Due to a past altercation, Magana and Hendricks exchanged words, and Magana challenged Hendricks to a fight. The two walked away from the party and, according to witnesses, Magana pulled out a black semi-automatic handgun and began firing at Hendricks. Hendricks attempted to flee but was struck by a round and fell down. Magana ran up to Hendricks and fired additional rounds into Hendricks at close range, killing him; he fled the scene.

II.   PROCEDURAL HISTORY

A.    Trial Court Proceedings

On July 13, 2009, the State charged Magana with murder in the first degree with a firearm sentencing enhancement and unlawful possession of a firearm in the second degree. On April 1, 2010, Magana filed a motion to "substitute counsel," wherein he sought appointment of a different attorney to defend him. Magana stated that he was dissatisfied with his legal representation because he alleged his defense counsel was not staying in contact with him and was not working in his best interests. Magana's defense counsel stated that he "stayed in contact with [Magana]" and went "over the discovery with [Magana]." Report of Proceedings (RP) (April 21, 2010) at 5. Defense counsel further stated that Magana "indicated that he doesn't like the options that I have

2

explained to him. . . . I am willing to consider, or continue to work as his attorney." RP (April 21, 2010) at 6. The trial court denied Magana's motion.

On April 29, 2010, the State amended the information to add a gang aggravating factor to the murder charge and raised the unlawful possession of a firearm charge to the first degree. On February 9, 2011, pursuant to a plea deal, the State filed a second amended information charging Magana with murder in the first degree, eliminating the unlawful possession of a firearm charge, and eliminating all enhancements. In exchange, Magana pled guilty to the second amended information. The plea deal included the State recommending a low end sentence of 250 months' confinement on a 250-333 month standard range. The agreement also allowed for LFOs including restitution, and 24-48 months community custody.

Sentencing occurred on March 25, 2011. At sentencing, Magana stated a desire to withdraw his plea, alleging that he was not competent[2] and had received ineffective assistance of counsel at the time he made his plea.[3] The trial court denied Magana's motion to set over sentencing and to withdraw his guilty plea. The trial court found there had been no showing that the withdrawal of the plea was necessary to correct any manifest injustice, that the plea was in any way involuntary or coerced, or that counsel was ineffective. After hearing the State's recommendation, which included 36 months of community custody, the trial court then sentenced

---

[2] Magana asserted that he was incompetent when he entered his guilty plea due to his father's recent death and because he likely suffered from mental illnesses. Magana was evaluated by a psychologist to assess whether he had a viable mental health defense to the charges and was diagnosed with mild depression. It is this diagnosis that Magana relies on for his motion to withdraw his guilty plea.

[3] Magana also asserted that his defense counsel pressured him into accepting the State's plea agreement.

Magana to 333 months of confinement, 36 months of community custody, and imposed LFOs, including restitution in the amount of $11,384.54.

B. Direct Appeal

In April 2011, Magana filed a notice of appeal, contending that the trial court erred by denying his motion to withdraw his guilty plea without conducting a competency hearing because his psychological evaluation indicated that he lacked the capacity to understand the nature of the proceedings against him. In his SAG, Magana asserted that his defense counsel was ineffective by pressuring him to plead guilty to murder in the first degree and for advising him to accept the State's plea agreement despite the findings from his psychological evaluation. CP 254, 260-61.

In an unpublished opinion filed September 19, 2012,[4] we affirmed Magana's conviction and sentence. Specifically, we concluded that the trial court did not abuse its discretion by denying Magana's motion to withdraw his guilty plea because Magana did not present sufficient evidence to call his competency into doubt. Nothing in the evaluation rendered him incompetent to enter a guilty plea. In fact, the evaluation showed that Magana was "fully capable of understanding the proceedings against him and assisting in his own defense." *State v. Magana*, noted at 170 Wn. App. 1039, 2012 WL 5348962, at *4. We also held that Magana did not meet his burden to show that his counsel's performance was deficient or that such deficient performance was prejudicial to his decision to plead guilty. There was no evidence in the record to support Magana's claims of ineffective counsel.

C. Post-Judgement Motions

On December 12, 2013, Magana filed a pro se motion to withdraw his guilty plea under CrR 7.8 and 4.2 ("2013 motion"). Magana claimed multiple due process violations, ineffective

---

[4] *State v. Magana*, noted at 170 Wn. App. 1039 (2012).

assistance of counsel, denial of his right to confront witnesses, and that newly discovered exculpatory evidence proved his innocence.

More specifically, Magana claimed his due process rights were violated because he was not afforded a competency hearing or allowed to withdraw his guilty plea and that his court appointed attorney allowed the State to file excessive charges against him.[5] Magana also argued that he received ineffective assistance of counsel because his counsel did not move to have Magana arraigned for murder in the second degree and because "counsel did not bring the issue of competency to the trial courts [sic] attention, but instead persuaded [him] to sign an *Alford* Plea[6] to First Degree Murder." CP at 275 (footnote added). Magana further argued that he received ineffective assistance of counsel and was denied his right to confront and cross-examine witnesses, when his attorney did not insist on witness statements being translated from Spanish to English.[7] Lastly, Magana claimed that his defense attorney failed to investigate several witnesses that did not make statements and failed to investigate witness statements that were part of the investigative record.

The trial court failed to rule on the 2013 motion at the time.

In July 2015, Magana filed a motion to modify his judgment and sentence with regard to his LFOs. The court considered and granted the motion on December 18. Magana was found indigent and his judgement and sentence was amended to strike the $1,500 court appointed attorney fees.

---

[5] Magana claimed that his psychological evaluation concluded that he did not have the ability to form the pre-meditated intent required to be convicted of murder in the first degree.

[6] *North Carolina v. Alford*, 400 U.S. 25, 32-38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[7] Magana argued that he was prejudiced by the untranslated documents because the witness statements may have benefitted him in his defense.

On July 7, 2016, Magana filed another pro se motion to withdraw his guilty plea pursuant to CrR 7.8 ("2016 motion"). He claimed that his plea agreement incorrectly indicated that the State "will" recommend 24-48 months community custody, but that instead it requested 36 months, so his decision to plead guilty was not knowing, intelligent, and voluntary. Magana also argued that, at sentencing, the trial court did not make an individualized inquiry into his current and future ability to pay and improperly imposed LFOs.

On September 7, Magana filed a petition for a writ of mandamus for his 2016 motion. The Washington Supreme Court did not accept Magana's petition because he failed to include a filing fee. Magana requested a waiver of the filing fee. In November, the trial court ruled that Magana's 2016 motion was not properly before the court.

On December 7, the Washington Supreme Court issued an order granting Magana's 2016 petition for a writ of mandamus. The order directed the Honorable Frank Cuthbertson to take action on Magana's 2016 motion. The trial court transferred the motion to this court on December 14 because it was time barred under RCW 10.73.090.

In February 2017, this court dismissed Magana's 2016 motion because he filed it more than one year later than the date of final judgment under RCW 10.73.090(3)(a).

In February 2018, Magana filed a motion to withdraw particular motions, including the 2013 motion to withdraw his guilty plea. Despite having withdrawn his 2013 motion, Magana filed a petition in the Supreme Court for writ of mandamus for his 2013 motion. The Supreme Court granted the petition for writ of mandamus and directed the trial court "to take action on the motion filed in that court by the Petitioner on December 12, 2013." CP at 621. In October 2020, Magana then filed a motion in the trial court to withdraw his 2018 "motion to withdraw particular motions." CP at 534 (emphasis omitted). The trial court granted the motion.

6

D.      Proceedings for the 2013 Motion to Withdraw Guilty Plea

On November 3, 2020, the trial court entered an order on Magana's 2013 motion. The court found that the 2013 motion was timely under RCW 10.73.090 because the motion was filed on December 12, 2013, and never ruled upon. The court ordered that it would retain consideration of the motion because it was not time barred and because Magana "has made a substantial showing that he or she is entitled to relief." CP at 538. The court further ordered that Magana's "motion shall be heard on its merits." CP at 538. The order also directed the State to file a response and maintained that "[a]fter reviewing the response, the Court will determine whether this case will be transferred to the Court of Appeals, or if a hearing shall be scheduled." CP at 538.

Magana subsequently filed four additional motions regarding the 2013 motion: (1) motion to amend/supplement motion to withdraw guilty plea, (2) motion to produce documents, (3) motion to take judicial notice, evidentiary hearing and to determine jurisdiction, and (4) motion for expert services. The trial court stated it would wait to take any actions on these motions until it received a response from the State regarding the 2013 motion.

On January 6, 2021, the trial court denied Magana's 2013 motion based on the "law of the case doctrine." CP at 689. The trial court found that this court ruled on Magana's ineffective assistance of counsel claims during his 2012 direct appeal. Additionally, the trial court ruled that Magana did not allege any matters that were unknown to him at the time of his appeal and so he was precluded from attempting to further argue claims that could have been ruled upon on direct appeal by this court had he presented them.

Magana filed a motion for reconsideration, arguing that the trial court erred by imposing the incorrect standard of review and by applying the law of the case doctrine, which was denied. Magana now appeals the order denying his 2013 motion.

ANALYSIS

I.      STANDARD OF REVIEW

We review a trial court's order on a motion to withdraw a guilty plea for an abuse of discretion. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). "A trial court abuses its discretion if its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" *Id*. (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). Given the facts and the applicable legal standard, if a court's decision is outside the range of acceptable choices then it is manifestly unreasonable. *Lamb*, 175 Wn.2d at 127. A court's decision is based on untenable grounds if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *Id.* The untenable grounds basis applies if the factual findings are unsupported by the record. *Id*. However, "when a trial court bases its otherwise discretionary decisions solely on application of a court rule or statute, the issue is one of law that we review de novo." *State v. Martinez-Leon*, 174 Wn. App. 753, 759, 300 P.3d 481 (2013).

II.     CrR 7.8(C) HEARING

Magana argues that the trial court violated his procedural due process rights when it failed to hold a hearing on the merits. The State argues that the trial court did not abuse its discretion when it decided the motion on the briefs and that the court's preliminary finding under CrR 7.8 did not determine the need for a hearing. We agree with Magana on the hearing requirement.

A.      Legal Principles

"A collateral attack on a criminal judgment and sentencing is subject to specific procedural rules." *State v. Molnar*, 198 Wn.2d 500, 508, 497 P.3d 858 (2021). "Collateral attacks filed in superior court are governed by CrR 7.8, and 'when a superior court receives a CrR 7.8 motion, it should follow the CrR 7.8(c) procedures.'" *Molnar*, 198 Wn.2d at 508-09 (quoting *State v. Waller*,

197 Wn.2d 218, 220, 481 P.3d 515 (2021)). No collateral attack on a judgement and sentence "may be filed more than one year after the judgment becomes final if the judgement and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). A collateral attack is "any form of postconviction relief other than a direct appeal." RCW 10.73.090(2). A motion to withdraw a guilty plea is a collateral attack. *Id*.

A defendant must demonstrate that a withdrawal of a guilty plea is necessary to correct a manifest injustice in order to succeed on a motion to withdraw a guilty plea. CrR 4.2(f). A manifest injustice exists where the plea was not voluntary or counsel was ineffective. *State v. DeClue*, 157 Wn. App. 787, 792, 239 P.3d 377 (2010). When a motion to withdraw a plea is made after judgment, CrR 7.8 governs. CrR 4.2(f). CrR 7.8 provides that the court may relieve a party from a final judgement for the following reasons:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:
> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
> (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5;
> (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) The judgment is void; or
> (5) Any other reason justifying relief from the operation of the judgment.

A defendant seeking to withdraw their guilty plea in a postjudgment motion must meet the requirements under both CrR 4.2(f) and CrR 7.8(b). *Lamb*, 175 Wn.2d at 127-28. The trial court

> shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that they are entitled to relief or (ii) resolution of the motion will require a factual hearing.

CrR 7.8(c)(2); *State v. Smith*, 144 Wn. App. 860, 863, 184 P.3d 666 (2008). If these prerequisites are absent or the motion is untimely, then the trial court must transfer the motion to the Court of Appeals for consideration as a personal restraint petition. CrR 7.8(c)(2); *Smith*, 144 Wn. App at 863.

"If the court does not transfer the motion to the Court of Appeals, it *shall* enter an order fixing a time and place for hearing and directing the adverse party to appear and show cause why the relief asked for should not be granted." CrR 7.8(c)(3) (emphasis added); *State v. Dallman*, 112 Wn. App. 578, 582, 50 P.3d 274 (2002).

B.      Magana Was Entitled to a Hearing Under CrR 7.8(c)

Here, the trial court denied Magana's 2013 motion to withdraw his guilty plea without a hearing to show cause. Magana made several claims in his motion, including involuntary plea, ineffective assistance of counsel, and newly discovered evidence. In the trial court's initial order on the motion, it held that the 2013 motion was timely filed under RCW 10.73.090. Because the motion was never ruled upon, the trial court ruled that the motion was not time barred.[8]

Additionally, the trial court found that Magana had made a substantial showing that he was entitled to relief. The trial court stated that it would determine whether the case would be transferred to this court or schedule a hearing after reviewing the State's response brief. However, this course of action departs from the procedure required by CrR 7.8(c). The trial court then denied Magana's motion. There is no mention in the record as to why the trial court did not hold a show cause hearing despite the trial court's order stating "that the defendant's motion shall be heard on its merits." CP at 538.

---

[8] The State argues that the motion was time barred. But the State neither cross appeals, nor assigns error to this ruling by the trial court. Accordingly, we do not address the State's timeliness argument.

Because the trial court retained consideration of the motion after finding the necessary prerequisites under CrR 7.8(c)(2) and did not transfer the motion to this court, the trial court was required to fix a time and place for a show cause hearing. CrR 7.8(c)(3). We hold that the trial court erred when it failed to do so. Accordingly, we remand this case to trial court to hold a show cause hearing for Magana's 2013 motion.

Magana also argues that the failure to hold a hearing was a violation of his procedural due process rights. But to establish a violation, Magana must provide reasoned analysis under established procedural due process authority. *See Mathews v. Eldridge*, 424 U.S. 319, 332-33, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Magana fails to do so. "'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *In re Request of Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986) (quoting *United States v. Phillips*, 433 F.2d 1364, 1366 (8th Cir. 1970)). Still, the error above requires remand. Accordingly, it is not necessary to reach Magana's remaining issues raised in his opening brief.

III.    STATEMENT OF ADDITIONAL GROUNDS (SAG)

We address Magana's SAG separately because he makes arguments he could have raised in his first direct appeal. We take this opportunity to reassert the general rule that a "defendant is prohibited from raising issues on a second appeal that were or could have been raised on the first appeal." *State v. Mandanas*, 163 Wn. App. 712, 716, 262 P.3d 522 (2011). Even issues of constitutional import often cannot be raised in a second appeal. *Id*. at 717. "'Where . . . the issues could have been raised on the first appeal, we [may] hold they may not be raised in a second appeal.'" *Id*. at 717 (quoting *State v. Sauve*, 100 Wn.2d 84, 87, 666 P.2d 894 (1983)).

In his SAG, Magana argues that restitution was unconstitutionally imposed on him and that the trial court was required to strike all LFOs and waive all interest accrued. He also argues that

he was misinformed about a direct consequence of his plea with regard to the term of community placement. He further argues that that the State breached the plea agreement by recommending 36 months of community custody when it agreed to recommend 24-48 months.

Based on *Mandanas*, we decline to reach these issues raised in Magana's SAG.

We reverse the trial court and remand Magana's motion to withdraw his guilty plea so that the trial court can hold a show cause hearing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Lee, P.J.

Price, J.