MIDWEST PRECISION SERVICES,
INC., an Illinois Corporation,
Plaintiff,

v.

PTM INDUSTRIES CORPORATION, a
Massachusetts Corporation, Defendant.

No. 83 C 3529.

United States District Court,
N.D. Illinois, E.D.

Nov. 30, 1983.

Ronald N. Heftman, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for plaintiff.

James J. Casey, Dennis C. Waldon, Nancy Sohn, Keck, Mahin & Cate, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Before the Court is defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, to transfer this case to the District Court of Massachusetts pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, defendant's motion to transfer is granted. Having determined that a transfer of this case to the District Court of Massachusetts is proper, the Court declines the opportunity to consider defendant's motion to dismiss and will leave that matter to the transferee court for its consideration.[1]

## I. FACTS

Plaintiff Midwest Precision Services, Inc. ("Midwest") brings this action against PTM Industries Corporation ("PTM") to recover damages for PTM's failure to accept delivery of a Maegerle Crushing Creep Feed Grinder ("the grinder"). Midwest is an Illinois corporation with its principal place of business in Roselle, Illinois. Midwest markets industrial machine tools. PTM is a Massachusetts corporation with its principal place of business in Westfield, Massachusetts. Federal jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

In Count I of its complaint, Midwest alleges that PTM breached an agreement between Midwest and PTM for the purchase of the grinder. In Count II, Midwest alternatively alleges that PTM tortiously interfered with a purchase and sale agreement between Midwest and the Shawmut Bank of Boston, Massachusetts.

In support of its breach of contract count, Midwest alleges that in November, 1982, PTM agreed to purchase the grinder from Midwest for the sum of $345,500. The discussions between Midwest and PTM personnel took place at the offices of Midwest in Roselle, Illinois. Later, and at PTM's request, Midwest alleges that it (1) made alterations to the grinder in order to conform to PTM's particular needs; (2) manufactured fixtures and tooling for use by PTM with the grinder; (3) trained PTM employees in the operation of the grinder and (4) arranged for the grinder to be shipped from Illinois to PTM's plant in Massachusetts.

Midwest further alleges that prior to delivery of the grinder, PTM and the Shawmut Bank of Boston, Massachusetts, agreed that Shawmut Bank would purchase the grinder from Midwest and then lease the grinder to PTM. After receiving the purchase order for the grinder from Shawmut Bank (Complaint at Exhibit B), Midwest delivered the grinder to PTM at its Massachusetts plant on January 25, 1983. PTM, however, refused to accept delivery of the grinder because it had been damaged during shipment. PTM also re-

---

1. See *Simonson Co. v. Green Textile Associates, Inc.,* 554 F.Supp. 1229, 1234–34 (N.D.Ill.1983); *Hall v. E.I. DuPont DeNemours & Co.,* 345 F.Supp. 353, 385 (E.D.N.Y.1972). Allowing the transferee court the opportunity to rule upon defendant's motion to dismiss is particularly appropriate when, as in this case, the resolution of that motion requires interpretation of the transferee court's state law. *MacNeil Bros. Co. v. Cohen,* 158 F.Supp. 126 (D.Md.1958).

fused to accept Midwest's offer to remedy defects in the grinder.

Count II of the complaint alleges that PTM tortiously interfered with Midwest's contractual relationship with the Shawmut Bank by wrongfully refusing to accept delivery of the grinder.

## II. DISCUSSION

In ruling upon a motion to transfer under 28 U.S.C. § 1404(a), the Court may consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents. *Kisko v. Penn Central Transportation Co.*, 408 F.Supp. 984, 986 (M.D.Pa. 1976). Mere allegations, standing alone, cannot be taken as proof of facts alleged in support of the motion. *Id.* Although the party seeking transfer bears the burden of persuasion that transfer is proper, the burden under § 1404(a) is substantially less than a transfer under the doctrine of *forum non conveniens. Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

Before a transfer can be made under § 1404(a), the movant must establish that (1) venue is proper in the transferor court; (2) venue is proper in the transferee court and (3) the transfer is for the "convenience of parties and witnesses, in the interest of justice." *Chicago, R.I. & P.R. Co. v. Igoe*, 212 F.2d 378, 379 n. 1 (7th Cir.1954); *Hess v. Gray*, 85 F.R.D. 15, 24 (N.D.Ill.1979). District courts are given broad discretion in determining whether a transfer under § 1404(a) is proper. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981); *Chicago, R.I. & P.R. Co. v. Igoe*, 212 F.2d 378, 379 n. 1 (7th Cir.1954).

When federal jurisdiction is founded solely upon diversity of citizenship, venue is proper in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose. 28 U.S.C. § 1391(a). A corporation, for venue purposes, is a resident of its state of incorporation, of any state where it is licensed to do business, and of any state where it is doing business.

28 U.S.C. § 1391(c). In this case, Midwest, the only plaintiff, is incorporated in Illinois and doing business in the Northern District of Illinois. PTM, the only defendant, is incorporated and doing business in Massachusetts. The claim arose in Massachusetts. Venue, therefore, is proper in the transferor court (Northern District of Illinois) and the transferee court (District of Massachusetts).

### A. *Convenience of the Parties*

Midwest's choice of a forum is entitled to substantial weight unless that forum lacks any significant contact with the underlying cause of action. *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D.Ill.1979). Midwest is a resident of the Northern District of Illinois and PTM is a resident of the District of Massachusetts. Although Massachusetts clearly has a more significant relationship to this action than Illinois, it cannot be said at this juncture that Illinois lacks *any* significant contact with the underlying cause of action. Thus, Midwest's choice of forum is entitled to substantial weight and transfer of the case solely for the convenience of the parties is not warranted.

### B. *Convenience of the Witnesses*

In considering the convenience of potential witnesses, the Court must consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues of the case. *Vaughn v. American Basketball Association*, 419 F.Supp. 1274, 1276–77 (S.D.N.Y. 1976); *Myers v. Pan American World Airways, Inc.*, 388 F.Supp. 1024, 1025 (D.P.R. 1974). At this stage, three issues are raised by the pleadings. First, whether PTM is the "real party in interest" and therefore liable under the purchase agreement between the Shawmut Bank and Midwest. Second, whether the grinder was so materially defective at the time of delivery that PTM was justified in refusing acceptance. Third, whether PTM tortiously inter-

fered with the contractual relationship between Midwest and the Shawmut Bank.

Probably the most significant factual issue in this case is the condition of the grinder at the time it was delivered to PTM's Massachusetts plant. PTM intends to call several PTM employees who inspected the grinder upon its delivery at the PTM plant. All of these employees are residents of Massachusetts. In addition, PTM intends to call Ron Jansen, an employee of Promatool, Inc. (Midwest's agent in Massachusetts), because of his familiarity with the condition of the grinder at delivery. Finally, PTM intends to call employees of Encon, Inc. of Chicopee, Massachusetts. Encon personnel were employed to unload the grinder upon delivery and observed the condition of the grinder at the time of delivery. Jansen and the Encon employees are residents of Massachusetts and would not be within the subpoena power of this Court.

Midwest, on the other hand, argues that trial in Massachusetts would deprive that court of the testimony of two Illinois residents who also observed the grinder at the time of delivery. Midwest intends to call at trial Ueli Maegerle, an employee of the manufacturer of the grinder, who accompanied the grinder to Massachusetts to supervise its installation. Midwest also intends to call Thomas Haldane, the driver who delivered the grinder to PTM's plant, for the purpose of testifying as to the grinder's condition at the time of delivery. Maegerle and Haldane, residents of Illinois, would not be within the subpoena power of the Massachusetts District Court should this case be tried in Massachusetts.

■ From the above discussion, it becomes apparent that if the physical condition of the grinder were the only issue raised by Midwest's complaint, trial in Massachusetts would merely shift the inconveniences from PTM's witnesses to Mid-

west's witnesses. Generally, a case should not be transferred under § 1404(a) to an equally inconvenient forum. *Van Dusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 823–24, 11 L.Ed.2d 945 (1963). In this case, however, Midwest's complaint raises issues other than the physical condition of the grinder at the time of delivery. The liability of PTM under Count I is predicated upon PTM being the "real party in interest" under a purchase and sale agreement between Midwest and the Shawmut Bank. Therefore, the legal relationship between the Shawmut Bank, PTM and Midwest will be a significant issue in this litigation.

Regarding that relationship, PTM intends to call at trial three officers and employees of the Shawmut Bank of Boston, Massachusetts. These officers and employees were involved in preliminary negotiations regarding specifications of the grinder as well as the leasing arrangement between PTM and the Shawmut Bank.[2] All of the Shawmut Bank personnel are residents of Massachusetts and would not be within the subpoena power of this Court. Also relevant to the "real party in interest" issue will be the testimony of Midwest's Massachusetts agent, Ron Jansen, who was involved in preliminary negotiations between Midwest and PTM. Jansen, although apparently willing to travel to Illinois to testify,[3] would be less inconvenienced if the trial took place in Massachusetts rather than Illinois. In sum, the witnesses whose testimony may resolve the "real party in interest" issue are PTM employees, Shawmut Bank employees and Ron Jansen, all of whom are residents of Massachusetts and not within the subpoena power of this Court.

Furthermore, Count II of Midwest's complaint charges PTM with tortiously interfering in the contractual relationship between the Shawmut Bank and Midwest.

---

**2.** Midwest argues that the testimony of Shawmut personnel regarding the Shawmut-PTM lease would be immaterial because the terms of the lease are not contested. Although that may be true, the testimony of Shawmut Bank personnel will be relevant to the issue of whether PTM

was the "real party in interest" under the Midwest-Shawmut agreement and therefore contractually liable under that agreement.

**3.** *See* Affidavit of Kenneth Kummer, at ¶ 8.

Since the alleged tortious conduct took place in Massachusetts,[4] the testimony of Shawmut Bank employees and PTM employees will be highly important in resolving the issues raised in Count II of the complaint.

■ On balance, considering the nature and quality of the testimony of potential witnesses, the Court finds that when all potential issues raised by the complaint are considered, the convenience of the witnesses would best be served by the transfer of this case to the District Court of Massachusetts.[5]

### C. *Interest of Justice*

With respect to this case, there are two important factors which weigh in favor of transferring this case to the District Court of Massachusetts. First, because the grinder is presently located in Massachusetts, the Massachusetts court will have greater access to that obviously important source of proof.[6] Second, the fact that Massachusetts law will be applied in this case weighs in favor of having a Massachusetts court interpret and apply that law. These two factors, therefore, weigh in favor of transferring this case to the District Court of Massachusetts.

### *Conclusion*

Although Midwest's choice of this forum is entitled to substantial weight in considering whether to grant PTM's motion to transfer, PTM has overcome Midwest's initial choice of forum by showing that the conveniences of witnesses and the interests

of justice would be best served by transferring this case to the District Court of Massachusetts. Defendant's motion to transfer this case to the District Court of Massachusetts is therefore granted. Accordingly, the Court does not decide defendant's motion to dismiss and instead will leave that matter for the transferee court's consideration.

IT IS SO ORDERED.

---

4. *See* Complaint, Count II, at ¶ 13.

5. Midwest intends to call at trial several of its employees who altered the grinder to meet PTM's specifications and other employees who trained PTM employees in the operation of the grinder. PTM, in response, intends to call its employees who traveled to Illinois for training on the grinder. The central issue in this case, however, is not the condition of the grinder when it left Midwest's plant, but rather its condition when it arrived at PTM's plant. *See* Complaint, Count I, at ¶ 10 (Midwest alleging that PTM wrongfully refused to accept delivery on the ground that cabinetry had been damaged in transit). Further, after reviewing Midwest's

complaint, the Court finds that the testimony of Midwest personnel who trained PTM employees in the operation of the grinder will bear little, if any, probative value on the issues raised in the complaint.

6. Midwest argues that this Court should retain the case because a substantial quantity of documentary evidence is located at Midwest's offices in Roselle, Illinois. Documents, unlike heavy machinery, can be readily photocopied or even transported without great expense. A trial in Massachusetts will not be greatly inconvenienced merely because relevant documents are stored in Illinois.