**Angelette V. DUNN, Individually and as Special Administrator of the Estate of Terry Dunn, Deceased, Plaintiff,**

v.

**SOO LINE RAILROAD COMPANY, a corporation, Defendant.**

No. 93 C 4648.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 23, 1994.

---

Philip H. Corboy, Susan J. Schwartz, Robert J. Bingle, David Casey Wise, Corboy, Demetrio & Clifford, P.C., Chicago, IL, for plaintiff.

Gary W. Fresen, Baker & McKenzie, Thomas F. Tobin, Connelly, Mustes & Schroeder, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Angelette Dunn, both individually and as special administrator of the estate of her deceased husband, brings this two-count complaint against defendant Soo Line Railroad Company, alleging negligence and wilful and wanton misconduct in connection with her husband's death. Presently before the court is Soo Line's motion for change of venue pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Soo Line's motion is granted.

### I. Background

On October 20, 1992, Terry Dunn was hunting with two companions on and around Soo Line's railroad tracks, rails, and right of way in Ixonia, Wisconsin. He was fatally injured when one of Soo Line's trains struck him. Terry Dunn's wife Angelette, the only named plaintiff in this action, was appointed special administrator of Dunn's estate for the purpose of prosecuting this lawsuit. Angelette Dunn is a resident of Illinois (as was Terry), while Soo Line is a Minnesota corporation.

### II. Discussion

Change of venue is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

It is undisputed that the present action could have been brought in the Western District of Wisconsin. Accordingly, we shall focus on the convenience of the parties and witnesses and the interests of justice.

■ We initially observe that, as a general rule, the plaintiff's choice in selecting a forum is entitled to substantial weight, particularly where the plaintiff has chosen her home state as the forum.[1] *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). However, where the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, "the plaintiff's preference has minimal value." *Robinson v. Town of Madison,* 752 F.Supp. 842, 847 (N.D.Ill.1990) (citations omitted). Accordingly, Dunn's selected forum will be but one factor we consider in ruling on Soo Line's motion.[2]

■ We next turn to convenience of the witnesses. In resolving a motion to transfer, the convenience of witnesses is one of the most important factors to be considered. *Rose v. Franchetti,* 713 F.Supp. 1203, 1214 (N.D.Ill.1989). In reviewing each party's list

---

1. Indeed, it is undisputed that the Northern District of Illinois would be more convenient for Dunn, as she is a resident here, than the Western District of Wisconsin, and neither would be particularly convenient or inconvenient for Soo Line, since it does business in both districts.

2. Dunn argues that "[w]here a plaintiff is a minor, the court should be even more careful of changing venue." Terry and Angelette Dunn's minor children, however, are not listed as plaintiffs in this action.

of proposed witnesses in the Joint Pretrial Order, it is apparent that the vast majority of relevant witnesses are either located in the Western District of Wisconsin or outside of both the Western District of Wisconsin and the Northern District of Illinois.[3] Both parties specifically identify several law enforcement personnel who investigated the accident, including Lieutenant Robert K. Henze, Deputy Mike Schloesser, and Deputy Robert Meyer of the Jefferson County Sheriff's Office, Officer Tryg Aasen of the Ixonia Police Department, and Jefferson County Assistant Coroner Gary Scherer, all of whom live and/or work in the Ixonia area.[4] In addition, Dunn lists ten other witnesses who live in Watertown, Wisconsin, near the accident site. The only eyewitnesses to the accident reside in Milwaukee, Wisconsin, which is roughly equidistant between Chicago and Madison, where a trial in the Western District of Wisconsin would be held. Finally, of the approximately eighteen witnesses who actually reside in the Chicago area, fully two-thirds are expected to testify about Terry Dunn's relationship with his family. As noted above, much of this evidence would be cumulative,

and almost certainly excluded. We shall therefore discount this already limited number of individuals who would be somewhat inconvenienced by a trial in the Western District of Wisconsin.[5] In sum, it is readily apparent that the convenience of the witnesses overwhelmingly favors transfer.

■ The same is true with respect to the "interest of justice" factor. This factor includes such considerations as the relationship of the forum, the court, and prospective jurors with the occurrence at issue, access to sources of proof, the cost of attendance of willing witnesses, as well as the amenability to service of process of unwilling witnesses, ensuring speedy litigation, and the familiarity of the trial court with the applicable state law. See Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989); Zalutsky, Pinski & DiGiacomo, Ltd. v. Kleinman, 747 F.Supp. 457, 462–63 (N.D.Ill.1990). In the present case, the occurrence at issue is the striking of Terry Dunn by Soo Line's train; that event occurred in the Western District of Wisconsin while Terry Dunn was hunting around Soo

---

3. Relying on *Midwest Precision Services, Inc. v. PTM Industries Corp.*, 574 F.Supp. 657, 659 (N.D.Ill.1983), Dunn suggests that Soo Line's assertions regarding the convenience of witnesses are entitled to no weight, because Soo Line failed to provide "affidavits, depositions, or stipulations" regarding the residences of alleged key witnesses. *Midwest Precision Services*, however, allows a court to consider facts submitted by way of "affidavit, deposition, stipulation *or other relevant document.*" *Id.* at 659. The Joint Pretrial Order is precisely such a document, and reliance on it is therefore appropriate in this context. *See, e.g. Coleman v. Mobil Oil Corp.*, 643 F.Supp. 1104, 1106 (E.D.Tex.1986) (relying on witnesses identified in pretrial order as basis for granting motion to transfer).

We also note that Dunn has submitted affidavits from only eight individuals, including herself, all of whom (conveniently enough) are located in Chicago. Dunn fails to acknowledge that she has identified forty-nine other witnesses, at least fifteen of whom live and/or work in Ixonia, Watertown, or Jefferson County, where the accident occurred. Furthermore, the only subject about which the non-party affiants will testify is the Dunns' familial relationship and the concomitant loss suffered by Terry Dunn's surviving family members. That same testimony is expected to be offered by four other Chicago residents and seven Missouri residents. Whether this seemingly cumulative testimony will be allowed by the

court which eventually presides over this trial is doubtful. Accordingly, Dunn's claim of inconvenience to a large number of "necessary" witnesses is dubious.

4. In their memorandum in response to Soo Line's motion, Dunn states:

Indeed, SOO LINE even states that the coroner is from the Ixonia, Wisconsin area. TERRY DUNN was killed when he was struck by a train. There is no dispute to that fact. What the coroner could add to this case is questionable.

Ironically, enough, however, Dunn also lists the coroner, Gary Scherer as a potential witness. We are unwilling to accept Dunn's suggestion that Scherer's contributions would be insignificant when she herself includes him on her witness list.

5. Of Dunn's five expert witnesses, only one resides in the Chicago area. Of the two who live in the Midwest (one is located in Indianapolis, the other in Champaign), both reside over 100 miles from the courthouse. The remaining experts, Edward Karnes and Robert H. Raney, reside in Colorado and Montana, respectively. The inconvenience to the non-Chicago experts, and particularly those from the Western states, would therefore not change significantly were we to transfer this case from Chicago to Madison.

Line's tracks.[6] As a result, the community has a close connection to the accident. Furthermore, as stated above, most, if not all, of the occurrence witnesses are located in the area of the accident, including the investigative personnel. These witnesses lie outside of this court's compulsory process range, and thus could not be compelled to testify at a trial in this district if they are unwilling appear voluntarily. As for willing witnesses, there will be cost involved for non-local witnesses regardless of where this trial is held; however, a significant number of Dunn's proposed witnesses live in the immediate vicinity of the accident, while comparatively few live in the Chicago area. Accordingly, the total cost of attendance for willing witnesses would likely be somewhat at a trial in Madison than in Chicago. Soo Line also notes that the average judge in the Western District of Wisconsin currently has approximately 250 cases pending, while the average caseload per judge in the Northern District of Illinois is approximately 350 cases per judge. Soo Line therefore argues that the relative congestion of the two courts militates in favor of transfer, a contention not rebutted by Dunn.

Finally, we observe that one of the most important issues to be considered is the familiarity of the trial court with the law to be applied in the case. *Cf. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981) (forum non conveniens analysis). Both in its motion to transfer and in its pending motion for summary judgment, Soo Line argues that the substantive law of Wisconsin would apply to this case, based upon Illinois choice of law principles. Dunn has not challenged this assertion in her response to either motion, and we therefore accept Soo Line's proposition for the purpose of its motion to transfer. Because a court in the Western District of Wisconsin would be far more familiar with Wisconsin law than this court, this factor clearly supports transfer. In sum, both the convenience of the witnesses and the interest of justice strongly favor transfer, and we therefore grant defendant's motion.

6. Dunn suggests that "material events" also occurred in Chicago, and includes among those events Terry Dunn's childhood and development, his friends, and his family. While these people

### III. Conclusion

For the reasons set forth above, defendant Soo Line Railroad Company's motion for change of venue is granted. This case is transferred to the Western District of Wisconsin. It is so ordered.

and events may be material to Terry Dunn's life, the "occurrence," "material event," or "underlying cause of action" in this action is solely Terry Dunn's death and the facts surrounding it.