**In re VITAL LINK LODI, INC., a California Corporation, Debtor and Debtor–in–Possession.**

**Aliant Health Management Services, Inc., Plaintiff,**

**v.**

**Vital Link Private Duty Lodi, Inc., d/b/a Agostini Health Care Systems, et al., Defendants.**

**Bankruptcy No. 99–4250.**

United States Bankruptcy Court, W.D. Missouri, Western Division.

Oct. 14, 1999.

M. Courtney Koger, Kansas City, MO, for plaintiff.

Evan D. Smiley, Patricia A. Sexton, Kansas City, MO, for defendants.

### MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

This case comes before the Court at this juncture on two competing motions. The first is a Motion to Remand filed by Aliant Health Management Services, Inc. ("Aliant"), the Plaintiff in the state court action that has been removed to this Court. The Motion asks the Court to abstain from hearing this removed adversary proceeding, pursuant to 28 U.S.C. § 1334, and to remand it to the Jackson County (Missouri) Circuit Court. The second motion, filed pursuant to 28 U.S.C. § 1412, is a Motion for Order Changing Venue filed by Vital Link Lodi, Inc., ("Debtor") and certain of the other Defendants in the removed cause of action, asking the Court to transfer this adversary proceeding to the Bankruptcy Court for the Central District of California, Santa Ana Division, where the Debtor's (and other Defendants') Chapter 11 proceedings are pending.

This Court has jurisdiction of these matters pursuant to 28 U.S.C. §§ 1334(c), 1412 and 1452. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

Because the Court has determined that this matter, including Aliant's Motion to Remand, would best be ruled by the Bankruptcy Court for the Central District of California where the Debtor's and other of the Defendants' consolidated Chapter 11 proceedings are pending, the Court will grant the Debtor's Motion for Order Changing Venue and refrain from ruling on Aliant's Motion to Remand.

### FACTUAL BACKGROUND

A brief review of the various proceedings involving these parties is necessary for an understanding of the issues now before the Court. From the Motions and Suggestions filed and the accompanying exhibits, and from the hearing held by the Court on September 29, 1999, we have gleaned the following pertinent facts:

Aliant is (or perhaps was) a home health care management company that had management contracts with the Debtor and other home health care companies that are subsidiaries of C.I.B. Healthcare Investments ("C.I.B."), which is a Nevada limited partnership. Aliant filed suit (the "Jackson County lawsuit") against the Debtor, C.I.B., and 20 other defendants in the Jackson County (Missouri) Circuit Court on May 22, 1998. An amended petition was filed on July 7, 1998, alleging causes of action based on breach of contract, quantum meruit, fraud, promissory estoppel, and breach of unilateral contract. Aliant seeks to pierce the corporate veil of the Debtor and the other defendant entities under an alter ego theory to assert direct claims against James and Kathy Hu, who are officers of C.I.B., and against the remaining 12 defendants, who are limited partners of C.I.B. and who are Taiwanese nationals.[1] The Defendants have filed counterclaims in the state court alleging, among other things, fraud, negligent misrepresentation, and breach of contract against Aliant.

---

1. According to Aliant's Suggestions in Support, these 12 defendants invested in C.I.B. "in order to purchase permanent United States residency" under 8 U.S.C. § 1153(b). That statute requires each limited partner to invest $1 million in a new United States business that would employ 10 or more legal employees, as a condition of obtaining permanent United States residency. Aliant states that it believes the evidence will show that C.I.B. was formed with a fraudulent purpose to allow the limited partners to gain permanent residency in the United States, that the limited partners did not actually invest the required $1 million each in C.I.B., and that this resulted in an undercapitalization of C.I.B. which was detrimental to Aliant.

C.I.B. states that it is a holding company and healthcare management company for three operating home health care businesses located in California, New York, and Missouri, and for various other home health care companies that have been closed as part of a financial restructuring. C.I.B. and its general partner, OMT Group Nevada, Inc., a Nevada corporation, filed Chapter 11 petitions in the Central District of California on June 11, 1999, more than a year after Aliant filed suit against them in Missouri (OMT Group is also a defendant in the Jackson County lawsuit). Vital Link Lodi, the Debtor herein, followed suit with its own Chapter 11 filing on June 18, 1999. According to the Debtor's Motion and Suggestions, the three Chapter 11 cases are being jointly administered in the Santa Ana Division of the Bankruptcy Court for the Central District of California. (These three debtors are referred to collectively as "the California Chapter 11 debtors.")

There are other pending lawsuits involving these and other parties. C.I.B., OMT Group Nevada, Inc., Vital Link Lodi, the Hus, and various other parties sued Aliant and numerous other defendants on May 17, 1999, in the Orange County (California) Superior Court, alleging fraud, negligent misrepresentation, breach of contract, unjust enrichment, civil conspiracy, and various other causes of action. On March 3, 1999, Copelco/American Healthfund, Inc., which is said to be the major secured creditor of the California Chapter 11 debtors, filed suit in the Orange County Superior Court against C.I.B., OMT Group Nevada, Vital Link Lodi, and various other entities, alleging, inter alia, breach of loan and security agreements and conversion, and seeking the appointment of a receiver, as well as other relief.

According to the Debtor, the lawsuit filed by Aliant in Missouri and the lawsuit filed against Aliant in California arise out of the same facts and involve similar (but not identical) parties. Counsel for Aliant concedes that the factual issues are similar and vigorously argues that the claims asserted by the plaintiffs in California should have, in fact, been raised as counterclaims in the Jackson County lawsuit (but were not). Also, according to the Debtor, the two lawsuits filed in 1999 in the Orange County Superior Court have been removed to the Bankruptcy Court for the Central District of California, where they are pending as adversary proceedings.

All of these matters reached this Court by way of a Notice of Removal filed by the Debtor, Vital Link Lodi, Inc., on August 2, 1999, pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(1).

## DISCUSSION

As a preliminary matter, it appears that the Jackson County lawsuit has been properly removed in the first instance to this Court.[2] The relevant statute, 28 U.S.C. § 1452(a), provides that a party "may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending ...," 28 U.S.C. § 1452(a), and pursuant to the District Court's standing Letter of Referral, dated August 15, 1984, matters involving debtors are automatically referred to the bankruptcy court. 28 U.S.C. § 157(a). The procedures for removal of a case from the state court to the federal court are spelled out in Bankruptcy Rule 9027, which initially requires that the notice of removal shall be filed with the clerk for the district and division within which is located the state court where the civil action is pending. Rule 9027(a)(1). Jackson County is in the Western District of Missouri, and therefore it was proper that the Notice of Removal be filed in this District

---

2.  Counsel for Aliant has noted that C.I.B. first attempted to remove the Jackson County lawsuit directly to the Central District of California, in violation of 28 U.S.C. § 1452(a) and Rule 9027(a)(1). Since that attempted removal did not comply with the statute and the rule, it was ineffective to remove the case and has no bearing on the present proceedings. The debtor has now complied with the rule and the statute.

and that the case be assigned to the Western Division of this Court. The Court notes, however, that 28 U.S.C. § 1452(a) is the only reason that this case is before this Court.

### 1. Venue

The transfer of an adversary proceeding to another district is governed by 28 U.S.C. § 1412 and Bankruptcy Rule 7087. The statute provides:

> A district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412.

This provision is implemented by Bankruptcy Rule 7087, which provides:

> On motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2).

FED.R.BANKR.P. 7087.

■■■ The granting or denial of a motion to change venue is discretionary with the court, *United States v. Phillips*, 433 F.2d 1364, 1368 (8th Cir.1970), and the moving party has the burden to establish, by a preponderance of the evidence, that transfer is warranted and appropriate. *Wittes v. Interco, Inc. (In re Interco, Inc.),* 139 B.R. 718, 720 (Bankr.E.D.Mo.1992). The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction, because speedy and economic administration of cases is a paramount consideration in the bankruptcy process. *Nixon Machinery Co. v. Roy Energy, Inc. (In re Nixon Machinery Co.),* 27 B.R. 871, 873 (Bankr. E.D.Tenn.1983). Accordingly, there is a strong presumption in favor of placing venue in the district where the bankruptcy case is pending. *Windsor Communications Group, Inc. v. Five Towns Stationery, Inc. (In re Windsor Communications Group, Inc.),* 53 B.R. 293, 296 (Bankr. E.D.Pa.1985).

■■■ In an effort to balance the inconveniences and hardships which normally arise whenever a change of venue is contemplated, the courts have developed several factors that may be considered when ruling on such a motion. Some of these factors are:

> (1) The proximity of creditors to the court.
>
> (2) The proximity of the debtor to the court.
>
> (3) The proximity of necessary witnesses.
>
> (4) The location of the debtor's assets.
>
> (5) The economic administration of the bankruptcy estate.
>
> (6) The relative advantages and obstacles to a fair trial.
>
> (7) The economic harm to the debtor in changing venue.
>
> (8) The inability of a party to defend in the new forum.

*Mann v. Michael Industries, Inc. (In re Inland Shoe Manufacturing Company, Inc.),* 90 B.R. 981, 983–84 (Bankr.E.D.Mo. 1988); *Burlingame v. Whilden (In re Whilden),* 67 B.R. 40, 42 (Bankr.M.D.Fla. 1986).

■■■ An extensive discussion of these factors is not necessary to demonstrate that venue of this adversary proceeding is properly in the Central District of California, not in the Western District of Missouri. Virtually all of these factors favor transferring venue. For example:

(1) Although the parties have not favored the Court with a list of the Debtor's creditors, the Debtor states that the three Chapter 11 Debtors in California collectively have about 100 creditors, several of whom are parties to the adversary proceedings now pending in the California bankruptcy court. To the Court's knowledge, the only creditor that could be said to be domiciled in Missouri is Aliant. Presumably, the large majority of the credi-

tors are located in California; certainly, Aliant has not made any suggestions to the contrary.

(2) The Debtor here, Vital Link Lodi, is a California corporation with its headquarters and business offices in California. All of the Debtor's books and records are located in California. It has filed Chapter 11 bankruptcy in California. It apparently is no longer in business in Missouri. Obviously, the Debtor is much closer to the bankruptcy court in California than it is to this Court.

(3) The Debtor asserts that all of its direct witnesses (approximately 20 individuals) are located either in California or Taiwan, whereas the only witnesses in Missouri are Aliant's principals. If this litigation should continue in Missouri, the Debtor (and its affiliated companies and fellow Chapter 11 debtors, who are also defendants in the Missouri litigation) would incur considerable expense in bringing those witnesses to Missouri and in employing Missouri counsel. Deposition costs would likewise be substantially increased because of the necessity for lawyers to travel between Missouri and California and any other locations where the witnesses might be found. According to the Debtor, Aliant's principals formerly resided in California, and the parties formed their contractual relationship in California.

(4) The large percentage of the assets of the three California Chapter 11 debtors are in California and are subject to the jurisdiction of the California bankruptcy court.

(5) It would be much more economical and efficient to administer the Debtor's bankruptcy proceedings if all adversary proceedings involving the Debtor could be maintained in the California bankruptcy court. There is already pending in the California bankruptcy court one adversary proceeding involving these same parties, and it appears many of the issues in that litigation are the same as or similar to the issues in the Jackson County lawsuit. Each party is accusing the other of fraud,

misrepresentation, and similar tortious actions. It would be much more efficient and expedient to try those matters at one time in a single forum. In contrast, no efficiencies would be realized by keeping this adversary matter in Missouri, particularly since this Court has absolutely no connection with this Debtor or its Chapter 11 proceedings.

(6) It is difficult to assess the relative advantages and obstacles to a fair trial as those factors might affect these parties. Apparently, there would be some advantage to Aliant if the trial were held in Missouri, because Aliant's principals and offices are in Missouri. On the other hand, the Debtor (and its fellow Chapter 11 debtors) would face significant financial and logistical obstacles because their witnesses are in California and Taiwan and their business records are in California. Considering the number of defendants that have been joined in the Jackson County lawsuit filed by Aliant, it would seem that this factor tilts in favor of the Debtor, although the Court certainly believes that the parties will receive a fair trial regardless of where it is conducted.

(7) It is quite apparent that it would be much more expensive for the Debtor to have this litigation continue in Missouri than it would be if the proceedings were transferred to California. The Debtor would have the added expense of employing Missouri counsel as well as the substantial costs associated with bringing all necessary witnesses to Missouri for trial, as previously noted.

(8) There would be nothing of a legal nature to prevent Aliant from prosecuting its cause of action against the Debtor in the California bankruptcy court. Moreover, as noted, Aliant is already defending an action there (the removed Orange County lawsuit) which appears to involve many of the same claims and issues as the Jackson County lawsuit. Presumably, Aliant already has California counsel to represent it in the litigation pending there.

Consolidating all actions in the California bankruptcy court might well be more economical for Aliant as well as for the Debtor.

In addition to these factors, the Court notes that any judgments in the lawsuits filed by these warring parties could have a significant impact on the possible reorganization of the California Chapter 11 debtors. Therefore, it seems appropriate that the California bankruptcy court should be the one to decide whether the Jackson County lawsuit should be tried in the Missouri state court or in the California bankruptcy court.

Upon consideration of all of these factors, the scales weigh heavily in favor of transferring the venue of this adversary proceeding to the bankruptcy court for the Central District of California.

### 2. Remand

■ In view of the Court's decision to transfer this proceeding to the Central District of California, it is unnecessary for the Court to give detailed consideration to Aliant's Motion to Remand. Instead, it seems that this Court should defer to the bankruptcy court in California, where venue is proper, as the appropriate court to rule on Aliant's Motion.

■ Additionally, because the parties have not provided any reason that the Court must take up these motions in any specific order, and the Court has not discovered any dispositive case law,[3] we believe that transferring venue to the Central District of California and allowing that court to rule on the remand issue best serves the interests of justice and the interests of judicial economy. The Califor-

nia bankruptcy court is in a better position to consider the issues of abstention and remand (inasmuch as it is more familiar with the complexities of the bankruptcy case and related litigation) than this Court is, the majority of the interested parties are located in California, and perhaps most importantly, Aliant will not be prejudiced because its Motion will be transferred along with the case, as pending, essentially unaffected by the change of venue. *See Saltzberg v. TM Sterling/Austin Assoc.,* 746 F.Supp. 1225 (S.D.N.Y.1990); *Midwest Precision Services, Inc. v. PTM Industries Corp.,* 574 F.Supp. 657 (N.D.Ill.1983); *Wilmot H. Simonson Co. v. Green Textile Assoc.,* 554 F.Supp. 1229 (N.D.Ill.1983); *Stolz v. Barker,* 466 F.Supp. 24 (M.D.N.C. 1978); *Thomas v. Silver Creek Coal Co.,* 264 F.Supp. 833 (E.D.Pa.1967); *Hercules Co. v. S/S Aramis,* 226 F.Supp. 599 (E.D.La.1964); *United States v. Swift & Co.,* 158 F.Supp. 551, 560 (D.D.C.1958) (all transferring venue and withholding decision on pending motions when doing so would allow the transferee court to decide important issues that are critical to the disposition of the case).

For these reasons, the Court will refrain from ruling on Aliant's Motion to Remand.

For the reasons stated herein, it is

**ORDERED** that the Motion for Order Changing Venue filed by Vital Link Lodi, C.I.B. Healthcare Investments, L.P., and OMT Group Nevada, Inc., is hereby GRANTED, and this cause is hereby transferred to the Bankruptcy Court for the Central District of California, Santa Ana Division, and the Clerk of the Court is directed to do all things necessary to effect such transfer forthwith. It is

---

3. *See Maryland Casualty Company v. Aselco,* 223 B.R. 217 (D.Kan.1998) (on competing motions, declined to grant change of venue and determined that the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) applied). *Aselco* is distinguishable from the instant case in that there were no related or similar claims pending between the parties in the bankruptcy court, as there are in this case. If nothing else, the *Aselco* case demon-

strates that the court has the discretion to grant either remand or a change of venue. *See also, Gabel v. Engra Inc. (In re Engra, Inc.),* 86 B.R. 890, 893 (S.D.Tex.1988) (mandatory abstention request granted); *Lone Star Industries, Inc. v. Liberty Mutual Insurance,* 131 B.R. 269, 272 (D.Del.1991) (indicating that remand motion must be determined before change of venue motion).

**FURTHER ORDERED** that the Motion to Remand filed by Aliant Health Management Services, Inc., is hereby transferred to the Bankruptcy Court for the Central District of California, Santa Ana Division, for further proceedings.

**SO ORDERED.**