Earl E. DOAGE, Plaintiff,

v.

BOARD OF REGENTS, a body politic and Corporate, Illinois State University, Thomas Wallace, David Strand, Joseph Ebbesen, Carl Kasten, Nancy Masterson, Patricia McKenzie, James Myles, Barbara Scheibling, Nirangan Shah, Myron Siegel, William Sulaski, Gretchen Winter, Willie Fowler, Miles McGrew, Amy Mersinger, or their Successors, Defendants.

No. 96 C 6562.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 8, 1997.

Sheribel F. Rothenberg, Chicago, IL, for plaintiff.

Ellen Elizabeth Douglass, Carney & Brothers, Chicago, IL, Gregory Keith Harris, Carol Hansen Posegate, Giffin, Winning, Cohen & Bodewes, Springfield, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge.

Plaintiff Earl E. Doage ("Doage") filed a Complaint in the United States District Court for the Northern District of Illinois, Eastern Division. Doage's Complaint, brought under the auspices of Title VII, alleges that he was the victim of race discrimination while employed at Illinois State University ("ISU"). The ISU campus is located in Normal, Illinois. Normal is located in the Central District of Illinois, Peoria Division. ISU then filed the instant motion to dismiss for improper venue or, in the alternative, to transfer venue to the Central District of Illinois. For the following reasons, the court grants the motion in part, and denies it in part.

### I.

■ ISU's first argument, that the court should dismiss the case because Doage chose to file the Complaint with the Northern District of Illinois instead of the Central District of Illinois, lacks merit. Title VII allows an employment discrimination plaintiff to file an action "in any judicial district in the state in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e–5(f)(3). Doage alleges that the discrimination took place in Normal, an Illinois city. Thus, the Northern District of Illinois is a proper venue.

### II.

■ However, ISU's second argument, that the Central District of Illinois is a more appropriate forum, bears merit. ISU brings the second argument pursuant to 28 U.S.C. § 1404(a), which reads, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) allows the court to transfer a case if (1) venue is proper in both the transferor and transferee court, (2) transfer is for the convenience of the parties and witnesses, and (3) transfer is in the interests of justice. *Kennedy v. Miller, Johnson & Kuehn, Inc.*, 940 F.Supp. 207, 208 (N.D.Ill.1996). "The weighing of factors for and against transfer neces-

sarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986).

### 1. Venue

As already discussed, 42 U.S.C. § 2000e–5(f)(3) places venue in this Title VII action in any district of Illinois, the state where ISU allegedly committed unlawful employment acts against Doage. Therefore, venue is appropriate in any of the three districts of Illinois, including both the Northern and Central Districts.

### 2. Convenience of the Parties and Witnesses

■ "In evaluating the convenience and fairness of transfer under § 1404(a), the court must consider both the private interests of the parties and the public interest of the court." *Medi USA v. Jobst Inst., Inc.,* 791 F.Supp. 208, 210 (N.D.Ill.1992). Though no public interests compel a decision either way, the relevant private interests warrant discussion. Private interests include Doage's choice of forum, the situs of material events, the availability of evidence in each forum, and the convenience to the parties of litigating in the respective forums. *Sipes v. American Home Prods. Corp.,* No. 96 C 7549, 1996 WL 734674, *1 (N.D.Ill. Dec. 19, 1996); *College Craft Co. Ltd. v. Perry,* 889 F.Supp. 1052, 1054 (N.D.Ill.1995).

#### a. Choice of Forum

Generally, Doage's choice to proceed with his action in the Northern District of Illinois would be given substantial weight. *Dunn v. Soo Line R.R. Co.,* 864 F.Supp. 64, 65 (N.D.Ill.1994). However, this case presents the exception: "when the plaintiff does not reside in the chosen forum, and the conduct and events giving rise to the cause of action did not take place in the selected forum, the plaintiff's preference has nominal value." *Sipes,* 1996 WL 734674, at *1; *Kingsley v. Dixon Old People's Home Fund, Inc.,* No. 96 C 2464, 1996 WL 417548, at *1 (N.D.Ill. July 22, 1996). According to the Complaint,

Doage lives in McClean County, Illinois, which sits within the bounds of the Central District of Illinois, and the underlying behavior leading up to this lawsuit occurred in that district. As such, Doage's choice of a forum different than the Central District of Illinois "is accorded virtually no weight." *Sipes,* 1996 WL 734674, at *1.

Tangentially, the court takes umbrage with Doage's purported argument against transferring venue. Doage defends his filing the lawsuit with the clerk of the Northern District of Illinois by stating that,

> he thinks he is more likely to receive a fair trial in this district court, rather than in the Central District of Illinois, which is dominated by the economic and political force of the Illinois State University. By selecting the Northern District, plaintiff seeks to level the playing field and avoiding [sic] the real economic and political pressure a major institution such as defendant's pose in litigating this highly sensitive race discrimination matter.

(Mem. in Resp. to Mot. to Dismiss, p. 3.) This "defense" involves an offensive implication: that neither a federal judge nor a federal jury from the Central District of Illinois could provide him with a fair trial.

First, the court looks askance at Doage's claim for intimating that a panel of jurors residing within the Central District of Illinois would reach its verdict based not upon the facts before it, but on the surrounding economic and political pressures provided by ISU. Contrary to Doage's assertion, it is a goal—not a problem—of the federal court system to allow members of the community from which the controversy arose to sit on the jury panel and decide the community-related case. *Medi,* 791 F.Supp. at 210. Therefore, the members of the Central District of Illinois Community are entitled to decide the instant dispute between fellow members of the community. *Id.* Challenges for cause and peremptory challenges are available to Doage in voir dire to "weed out" prospective jurors whom he suspects will render a biased verdict.

Second, that a U.S. District Judge sitting in the Central District of Illinois, or any other district within this country, can be swayed or "dominated" by the surrounding economic and political forces of any institution within the district's boundaries or on an uneven "playing field" borders on the preposterous. Federal courts are not "playing fields," any more than federal judges are umpires. *See Smith v. Farley,* 59 F.3d 659, 665 (7th Cir.1995) ("Judges are not umpires, calling balls or strikes; or judges of a moot court, awarding victory to the side that argues better."). And federal litigation is not "merely a game, a joust, a contest; it is also a quest for truth and justice." *Ash v. Wallenmeyer,* 879 F.2d 272, 275 (7th Cir.1989). The so-called "playing field" need never be leveled *in* a federal court, for the federal judicial system is designed to do just that, provide a forum for litigants to pursue actions authorized by Congress, like those actions available under Title VII, created to make equal the employment "field," among other "fields." *See Schmidt v. Methodist Hosp. of Ind., Inc.,* 89 F.3d 342, 344 (7th Cir.1996). The authors of the Constitution designed a federal court body that is removed from the pressures, political, economic, or otherwise. Federal judges are appointed for a life term—removed only by impeachment proceeding—so that their judgments will escape the taint of political motive and economic gain. Accepting Doage's argument would mean the wholesale transfer on motion of hundreds of cases involving the City of Chicago and other municipal and academic entities out of the Northern District of Illinois and to the Central or Southern Districts of Illinois. The court declines the opportunity to accept the argument; instead, for the above reasons, the court rejects the chimerical supposition proffered by Doage. Doage should raise any other issues regarding the possibility of inequities in the newly-assigned venue with the assigned judge sitting in the Central District of Illinois.

*b. Situs of Material Events*

Doage alleges that ISU conducted its unlawful employment practices while he was employed at the university campus, which is located in the Central District of Illinois. All of the alleged unlawful practices took place on the ISU campus. Because every single

event material to the instant lawsuit occurred within the confines of the ISU campus, the court finds this factor to weigh heavily in favor of a venue transfer.

### c. Availability of Evidence

The entirety of the documentary evidence exists within the Central District of Illinois boundaries. All the "employment records relevant to such [unlawful] practice[s] are maintained and administered," *see* 42 U.S.C. § 2000e–5(f)(3), at the ISU campus.

Moreover, all current ISU officials, who may be called to testify regarding university policy, work at campus offices and reside in the campus area. (The only ISU office in the Northern District of Illinois is an ISU Foundation office, which houses two ISU employees from the university's Alumni Services Department. These employees have nothing to do with the department for which Doage worked, nor do they make decisions relating to hiring/firing practices.) But Normal, Illinois, the city which surrounds the campus, is more than one-hundred miles from the U.S. District Court for the Northern District of Illinois. Federal Rule of Civil Procedure 45 limits the service of a trial subpoena to a one-hundred mile radius of the federal courthouse at which the potential witness may testify. Fed.R.Civ.P. 45(b)(2). Thus, this court, sitting in the Northern District of Illinois, located in Chicago, Illinois, may not compel the attendance of unwilling ISU employee-witnesses found in the Normal, Illinois area. The court is mindful that it could compel such unwilling witnesses to attend a deposition in lieu of their live appearance in the Northern District of Illinois courthouse, but that would be unfair to the trier of fact and the litigants. "[T]he trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured[;] ... [n]or should a litigant have to rely on deposition evidence where live witness testimony can be procured." *Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd.*, 776 F.Supp. 1271, 1277 (N.D.Ill.1991).

In sum, the entirety of the documentary evidence and the majority of the potential trial witnesses exist outside of this district and outside of the court's subpoena power. The distance between the U.S. District Courthouse sitting in the Northern District of Illinois and the various sources of proof creates an impediment to the court's access to those same sources. However, the U.S. District Court for the Central District of Illinois would not have such a hindrance and, thus, this factor cuts in favor of a transfer of venue.

### d. Convenience of Parties and Witnesses

The court also finds the forum chosen by Doage to be an inconvenient one with respect to all parties and all prospective witnesses. All the involved parties, including Doage himself, reside in the Central District of Illinois. As already stated, the witnesses for both Doage and ISU are likely to be current and former employees at ISU, and are likely to live in and around the ISU campus. The site of the ISU campus is less than forty miles from the U.S. District Courthouse for the Central District of Illinois, Peoria Division, and more than one-hundred miles from that of the Northern District of Illinois. Were the court to deny the motion to transfer, the potential witnesses and parties would be required to travel over two-hundred miles roundtrip to attend the court proceedings. Most likely, witnesses and parties necessary for successive days would find it necessary to stay in Chicago-area hotels, thereby adding to the litigation costs. But these added costs would be unreasonable in light of the above discussion. Requiring prospective witnesses and the parties to travel great distances each day of litigation is unnecessary; this factor weighs in favor of a venue transfer.

### e. Conclusion

Assembling each of the above four factors, the court finds that transferring the case *sub judice* to the Central District of Illinois would result in a more convenient forum for both the parties and the possible witnesses.

### 3. Interest of Justice

The final component, the "interest of justice" element, which pertains to the "efficient administration of the court system," is a distinct and "separate component of a § 1404(a) analysis." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986). In other words, this final ingredient

**262**

may direct the court towards a denial of the motion, though it already found the current venue to be an inconvenient one for the parties and witnesses. *Id.* at 220. The component includes factors inapplicable to the instant case, such as the speed at which the case will proceed to trial, the feasibility of consolidation, and the court's familiarity with applicable law. *Id.* at 221 n. 4; *Reinke v. Boden,* No. 92 C 744, 1996 WL 467240, at *1 (N.D.Ill. Aug. 13, 1996). But the element also includes a fourth factor, the public interest in having a case resolved in a particular forum. The court finds that this factor directs it to transfer venue.

Resolving litigated controversies in their locale is a desirable goal of the federal courts. *Medi,* 791 F.Supp. at 210. The instant dispute involves an employee of ISU as well as ISU itself. Both reside in the Central District of Illinois, and all relevant alleged acts occurred within that same district. ISU is a major employer and attraction of the Normal, Illinois area, and its existence and well-being is of major importance to the community within the Central District of Illinois. Those members of the community should also be the members of the prospective jury for this case. It is they who should decide this case. Accordingly, the court finds that the transfer of venue from the Northern District of Illinois to the Central District of Illinois would also be in the best interest of justice.

### III.

In conclusion, the court finds that Doage properly filed the Complaint in the Northern District of Illinois, though the Central District of Illinois is the more convenient forum. The court denies ISU's motion to dismiss, but grants its motion to transfer venue. The court orders the court clerk to transfer the entire case file to that of the Central District of Illinois. The court relinquishes jurisdiction to its sister court.

IT IS SO ORDERED.