**F & G SCROLLING MOUSE, L.L.C., Fernando Falcon, and Federico Gilligan, Plaintiffs,**

v.

**MICROSOFT, INC., Honeywell, Inc., and Key Tronic Corp., Defendants.**

**No. 98 C 7655.**

United States District Court, N.D. Illinois, Eastern Division.

May 11, 1999.

## MEMORANDUM OPINION AND ORDER

PALLMEYER, District Judge.

F & G Scrolling Mouse L.L.C. (F & G), Fernando Falcon and Federico Gilligan sue Microsoft, Inc., Honeywell, Inc., and Key Tronic, Inc. for trade secret misappropriation, breach of contract and unfair competition. All Defendants move to transfer venue to the Western District of Washington pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Defendants' motions are granted.

## BACKGROUND

The principals of F & G, Fernando Falcon and Federico Gilligan, are citizens of Argentina. (Am.Compl.¶ 2.) Gilligan resides in Buenos Aires; Falcon now lives in Milan, Italy. F & G is an Illinois corporation, incorporated on November 9, 1998. (Key Tronic Mot., Ex. C.) Apart from initiating this lawsuit, however, F & G apparently does no business of any kind in Chicago. Microsoft and Key Tronic are Washington corporations, both with principal places of business in Washington, (Am. Compl.¶ 3); Microsoft is based in Redmond, in the Western District of Washington, and Key Tronic is in Spokane, in the Eastern District of Washington. Honeywell is a Delaware corporation with its principal place of business in Minnesota. (Id.)

F & G's allegations, in essence, are as follows. In the early 1990s, Falcon and Gilligan, software and hardware designers, spent much time and money developing a unique computer mouse that could point and scroll concurrently and at a variable rate. (Id. ¶ 7.) Falcon and Gilligan attempted to interest several large companies in their new mouse technology. In June 1993, they met in El Paso, Texas with Honeywell representatives, including individuals from Honeywell's keyboard division (now Key Tronic). (Id. ¶ 8.) Prior to this meeting, Falcon and Gilligan and a Honeywell employee named Chuck Fauble signed a "Proprietary Information Agreement." (Id.) Key Tronic purchased Honeywell's keyboard division in July 1993, and Fauble went to work for Key Tronic. (Ross Aff. ¶ 4.) Between June and December 1993, Falcon and Gilligan gave mouse prototypes and software to Honeywell/Key Tronic[1] and disclosed detailed technical information in a document entitled "Scrolling Mouse Technology." (Am. Compl.¶ 9.)

On December 7, 1993, Fauble requested Falcon and Gilligan's permission to discuss their scrolling mouse with individuals from Microsoft at a meeting the next day, and Falcon and Gilligan agreed, on the condition that any sharing of proprietary information be covered by the non-disclosure agreement. (Id. ¶¶ 9, 28.) Fauble later told Falcon and Gilligan that the Microsoft meeting was postponed, and then in February 1994 informed them that Honeywell/Key Tronic was no longer interested in their mouse technology. (Id. ¶ 10.) Meanwhile, in January 1994, Microsoft filed a patent application for pointing and scrolling mouse technology (the '344 patent). (Id. ¶ 28.)

Falcon and Gilligan allege that Honeywell/Key Tronic did in fact meet with Microsoft and share information regarding F & G's mouse technology, which disclosure led directly to the design and marketing of Microsoft's "IntelliMouse" in 1996. (Id. ¶ 12.) Certain features of the IntelliMouse

---

1. The court follows the style of the allegations in the complaint, which refer to "Honeywell/Key Tronic."

are allegedly virtually identical to those developed by Falcon and Gilligan. (*Id.*) Additionally, the '344 patent application allegedly contained Falcon and Gilligan's proprietary innovations. (*Id.* ¶ 30.) Falcon and Gilligan's mouse technology was protected by patents issued in 1994; these patents have now been assigned to F & G. (*Id.* ¶ 13.)

Falcon and Gilligan filed suit on November 30, 1998.[2] They claim (1) trade secret misappropriation, based on Honeywell/Key Tronic's disclosure of information to Microsoft; (2) breach of contract, namely violation of the 1993 nondisclosure agreement between Falcon and Gilligan and Honeywell; and (3) unfair competition.

## DISCUSSION

■ "Under § 1404(a), a court may transfer a case if the moving party shows that: (1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *United Air Lines, Inc. v. Mesa Airlines, Inc.,* 8 F.Supp.2d 796, 798 (N.D.Ill.1998). The movant bears "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir. 1986). Defendants[3] state that venue is proper in the transferor and transferee districts, and F & G does not contest this point. The court therefore focuses on the convenience of the parties and witnesses and the interests of justice.

### Convenience of the Parties

Defendants note that Microsoft and Key Tronic are both located in Washington state, that sources of proof are found primarily in the Western District of Washington, and that Western Washington was the situs of key events in the dispute, including the development of the IntelliMouse and the December 1993 meeting between Key Tronic and Microsoft. Based on these considerations, Defendants argue that the Western District of Washington is the more convenient forum.

Plaintiffs respond that Chicago is F & G's "home," and their choice of forum is entitled to deference. F & G points out that Defendants are large national corporations better able to bear the costs of litigating away from their headquarters. F & G also argues that travel to Seattle, rather than Chicago, from Milan or Buenos Aires will inconvenience Falcon and Gilligan because it will require flying a greater distance.

■ It is well-established that a plaintiff's choice of forum is entitled to deference, but it is equally well-settled that this deference is of minimal value where the plaintiff has no connections to the forum and where none of the conduct complained of occurred in the forum. *Doage v. Board of Regents,* 950 F.Supp. 258, 259–60 (N.D.Ill. 1997). Plaintiffs cannot dispute this rule— many of Plaintiffs' cases expressly state it—and it is fully applicable in this instance. Plaintiffs have no ties to Chicago other than their counsel and the presence of recently-incorporated F & G, which, according to Defendants' unrefuted evidence, possesses no phone number, no employees, no assets or operations of any kind, indeed nothing except articles of incorporation to indicate it exists in Illinois at all.

Falcon and Gilligan will have to travel farther to reach Seattle, though Plaintiffs

2. Plaintiffs' original complaint also named IBM Corp. as a defendant, but in January 1999 IBM successfully moved for severance based on misjoinder. Plaintiffs' patent infringement claims against IBM now constitute a separate action, No. 99 C 1099.

3. Microsoft, Key Tronic and Honeywell have each filed separate motions to transfer venue. Their arguments overlap substantially, however, so the court will consider them jointly except where particular differences between the Defendants warrant separate discussion.

have not explained what this additional distance means in terms of actual flight schedules. The court will assume that it is easier to fly directly from Europe or South America to O'Hare Airport than to SeaTac Airport. Additionally, presumably Plaintiffs' legal fees will be somewhat greater if their counsel is regularly required to travel to Seattle. However, these burdens are outweighed by the substantial increase in convenience to Defendants.[4] In simplest terms, litigating in Seattle would enable Defendants (except Honeywell, who has no wish to stay in Chicago) to be significantly closer to home and closer to numerous witnesses and physical evidence; because they lack a business presence, witnesses, etc., in Chicago, Plaintiffs cannot convincingly claim such a clear advantage to litigating in the Northern District of Illinois. Therefore, the convenience of the parties favors Defendants.

## Convenience of Witnesses

Microsoft identifies eight employees it intends to call as witnesses, all of whom are in the Western District of Washington. By contrast, no party witnesses are located in the Northern District of Illinois. The convenience of party witnesses favors transfer.

Plaintiffs and Defendants argue less about the convenience of party witnesses than about third party witnesses, however. This is appropriate, because the court's ability to compel a witness to appear at trial is a central concern, and "employees of the parties will likely appear voluntarily." *Certain v. Aegon USA Inv. Management, Inc.*, No. 98 C 3015, 1999 U.S.Dist. LEXIS 500, at *8 (N.D.Ill. Jan. 12, 1999). Among the potential non-party witnesses in this case are two former Microsoft em-

ployees who live in the Western District of Washington and one who lives in eastern Washington, and three former Key Tronic employees, one (Chuck Fauble) who lives in eastern Washington and two whose current residence is unknown. Three other former Key Tronic employees currently reside in or near Spokane, in the Eastern District of Washington. Other potential witnesses outside the control of the parties include a former Honeywell employee in Minnesota, and another in Texas, and a former Key Tronic employee who now lives in California.

Clearly, sheer numbers favor transfer. Conspicuously absent from the above list is a single witness in the Northern District of Illinois. However, the court must do more than count heads. The nature of the witnesses' testimony and whether they can be compelled to testify are overarching concerns. *Id.* These considerations also favor transfer, however. The eight former Microsoft or Key Tronic employees living in eastern or western Washington listed above are either individuals who attended the December 1993 meeting where F & G trade secrets allegedly were shared, or staff who were involved in developing scrolling mouse technology. This suggests their testimony would be helpful to the resolution of this dispute. Further, all of these individuals could be compelled to testify at trial in Washington, but not in Chicago. *See* Fed.R.Civ.P. 45(b)(2), (c)(3)(a)(ii). This is not to discount the possible importance of the Texas witness and the Minnesota witness, who together met with Plaintiffs in Texas in 1993, or the California witness, who had significant contacts with Plaintiffs. These individuals would not be subject to subpoena regard-

---

4. The court is not unsympathetic to Plaintiffs' contention that the size of the Defendant corporations is relevant here. Notably, however, while Plaintiffs cite cases which acknowledge the relevance of the "relative financial positions" of the parties, *see, e.g., Gee v. FMC Corp.*, No. 95 C 4100, 1995 WL 708572, *2 (N.D.Ill. Nov.30, 1995), Plaintiffs offer no in-

formation about their own ability to fund expensive litigation. Although Microsoft, Key Tronic and Honeywell are obviously wealthy defendants, the court is not prepared to accord that factor much weight without knowing something about Plaintiffs' financial situation. *See id.*

less of whether or not the case is transferred, however.

Plaintiffs argue that Defendants' enumerated third party witnesses are somehow illegitimate or irrelevant, because their testimony would be cumulative or unnecessary. These contentions are presented in conclusory fashion with little support. The court is not prepared at this stage to discount the testimony of these witnesses. Plaintiffs also advance the somewhat novel theory that their case should stay in this district because of Chicago's central geographic location, particularly in light of the "scattered national presence of relevant third-party witnesses." (Pl.Resp., at 9.) The cases Plaintiffs cite to support their position involve multidistrict litigation where the court decided to consolidate dozens of suits into the district that had the most initial filings. *See In re Corrugated Container Antitrust Litigation*, 441 F.Supp. 921, 922 (J.P.M.L.1977); *In re Folding Carton Antitrust Litigation*, 415 F.Supp. 384, 385 (J.P.M.L.1976). This authority is not persuasive. Moreover, the added convenience of flying to Chicago rather than Seattle for those few third-party witnesses who are "scattered" is offset by the considerable number of important third-party witnesses in Washington state. In sum, Plaintiffs' arguments are unavailing. The convenience of witnesses favors Defendants.

**Interests of Justice**

■ The interest of justice analysis relates "to the efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey*, 796 F.2d at 221. The court need not spend much time exploring this factor, since both factors addressed above weigh quite heavily in favor of transfer, and "[t]he convenience of witnesses is of-

ten viewed as the most important factor in the transfer balance." *Law Bulletin Publishing Co. v. LRP Publications, Inc.*, 992 F.Supp. 1014, 1018 (N.D.Ill.1998). Suffice it to say that the court is satisfied that transfer will not significantly affect the speed with which this case is adjudicated, and that the judges in Seattle will be familiar with the applicable law.

The court is obliged to clarify one remaining issue. Plaintiffs argue at some length that this case is inherently linked to their suit against IBM, No. 99 C 1049, and that this court found these two cases to be related. Based on this premise, Plaintiffs make a number of arguments against transfer.

In January 1999, this court decided that Plaintiffs' claim against IBM had to be severed from its claims against Honeywell, Key Tronic and Microsoft because there was an insufficient nexus between the two suits. Once Plaintiffs filed a new complaint against IBM and an amended complaint against the other defendants, the IBM case was assigned to another court in the Northern District of Illinois; this court requested that the IBM case be reassigned based not on its relationship to Plaintiffs' suit against the other defendants, but based on its relationship to Plaintiffs' earlier attempt to sue IBM. The only related cases, then, are Plaintiffs' first filing against IBM and their post-severance action against IBM. In light of this court's severance order, Plaintiffs' arguments based on an intimate connection between the IBM case and this case are unavailing.

### CONCLUSION

Defendants[5] have made an adequate showing that trying this case in Seattle

---

5. The court is aware that many of Honeywell's arguments are less potent than those of the other two defendants, because Honeywell is based in Minnesota; if Honeywell were the lone defendant, transfer *vel non* would be a closer question. However, Honeywell appears to be a peripheral player in this dispute, since it sold its keyboard division to Key Tronic in July 1993, and allegedly did not retain any liabilities related to this claim. Indeed, the parties have been negotiating a stipulation to dismiss Honeywell as a defendant. In any event, the court sees no reason that Honey-

would be "clearly more convenient." Defendants' motion to transfer venue is granted, and this case is transferred to the Western District of Washington.

well's presence in the suit should stand in the          way of transfer.